[Civ. No. 10799. Third Dist. Dec. 22, 1964.]

FRANK SARMENTO et al., Plaintiffs and Appellants, v. ARBAX PACKING COMPANY et al., Defendants and Respondents.

---

Mazzera, Snyder & DeMartini and J. Calvert Snyder for Plaintiffs and Appellants.

Daley & Patridge, Daley, Patridge & Garrett and Richard B. Daley for Defendants and Respondents.

FRIEDMAN, J.—Arbax Packing Company, a partnership composed of defendants Armanino and Baxter, was in the business of packing and shipping cherry and grape crops. The firm purchased growing crops both for its own account and for resale to speculative buyers. It held a commission merchant's license, a broker's license and a dealer's license, all issued by the State Department of Agriculture. In the spring of 1961 Arbax purchased for $60,000 the entire crop of grapes growing on the Peirano ranch. This crop consisted of Zinfandel, Alicante and approximately 80 acres of Tokay grapes. Generally Arbax did not retain and market Tokay grapes for its own account. In July 1961 it sold the 80 acres

of Tokays to the plaintiffs, Mr. and Mrs. Frank Sarmento, for $25,000. In connection with that sale, two contracts were executed. One was a contract of sale, featuring a promise by the sellers (Arbax) to care for the crop at its own expense until it was ready for harvest and an agreement by the buyers (plaintiffs) to harvest the crop at their own expense and to stand all risks of loss. The companion contract was a "shipping agreement" in which plaintiffs agreed that the crop would be marketed by Arbax at the latter's normal rate of commission.

Shortly before harvest, a heavy rain damaged the crop and the grapes were sold at a loss of $7,069.84 to plaintiffs. Plaintiffs sued defendants on a common count for money advanced. The trial court denied recovery. ▮ The sole question on appeal arises from plaintiffs' contention that the transaction constituted sale of a "security" without a permit issued under the Corporate Securities Law. (Cal. Corp. Code, § 25000 et seq.)

The trial court made the following finding of fact: "The Plaintiffs exercised dominion over the grape crop sold to them. The Arbax Packing Company was in the packing business and in the business of buying crops for harvesting and sale. In some instances, the partnership bought all of the crop on a farm and resold a portion of it. The partnership was not in the business of selling a speculative interest in grape crops to the general public under an arrangement whereby the buyers received no identifiable segregated interest in any specific physical property and were necessarily obligated at the time of the purchase to hire the partnership to care for the property."

Plaintiffs assail this finding, asserting that it lacks the support of substantial evidence and does not support the judgment. The extent to which Arbax engaged in similar resales of crops is not entirely certain. Baxter, one of the partners, testified that during the summer of 1961 the firm had bought 10 to 20 crops of grapes and had resold 5 to 10 of these crops to speculative buyers. Some of the buyers paid for the entire crop in advance, others paid only one-half the agreed price prior to marketing. Each buyer signed a "shipping agreement" designating Arbax as the sole marketing agent, thus guaranteeing Arbax a profit in the form of a commission. Some of the buyers harvested the crops themselves, others instructed Arbax to do so.

▮ Section 25008, Corporations Code, defines a security in several ways, among them "any transferable share, invest-

ment or contract, or beneficial interest in title to property, profits, or earnings.'' This broad definition is designed to embrace speculative schemes to attract risk capital, no matter how ingeniously designed, and the courts will look through form to substance to achieve this end. (*Silver Hills Country Club* v. *Sobieski,* 55 Cal.2d 811, 814 [13 Cal.Rptr. 186, 361 P.2d 906, 87 A.L.R.2d 1135] ; *People* v. *Syde,* 37 Cal.2d 765, 768 [235 P.2d 601] ; 2 Ballantine and Sterling, Cal. Corporation Laws, pp. 904-905; 14 Fletcher, Cyclopedia of Corporations, pp. 179-180; 163 A.L.R. 1052, 1055.) ■ No hard and fast rule fixes that which constitutes a ''security.'' Rather, the question is determined on a case by case basis. The crucial question is whether the transaction comes within the regulatory purpose of the Corporate Securities Law. (*Silver Hills Country Club* v. *Sobieski, supra,* 55 Cal.2d at p. 814.) One general standard laid down by the decisions is the following : ''It is settled that the Corporate Securities Law was not intended to afford supervision and regulation of instruments which constitute agreements with persons who expect to reap a profit from their own services or other active participation in a business venture. Such contracts are clearly distinguished from instruments issued to` persons who, for a consideration paid, stipulate for a right to share in the profits or proceeds of a business enterprise to be conducted by others; and the court will look through form to substance to discover whether in fact the transaction contemplates the conduct of a business enterprise by others than the purchasers, in the profits or proceeds of which the purchasers are to share.'' (*People* v. *Syde, supra,* 37 Cal.2d at p. 768; see also *Austin* v. *Hallmark Oil Co.,* 21 Cal.2d 718, 727 [134 P.2d 777].)

Plaintiffs emphasize the speculative aspect of the transaction. ■ The term ''speculation'' does not signal automatic subjection to corporate securities regulation. Many kinds of speculative purchases are unregulated by law. ■ The sale of growing crops to commission merchants, dealers and food processors is widespread in California. Undoubtedly many crop purchases involve speculative expectations. The Legislature has regulated these activities to some extent by establishing licensing requirements for crop dealers and brokers. (Agr. Code, §§ 1261-1263.) Plaintiffs have not fashioned a record or presented data to demonstrate the impact of their contention on agricultural marketing practices.

Plaintiffs bank heavily on the ''shipping agreement'' which Arbax attached to each resale of a grape crop, contending

that it reposed exclusive control of the crop in Arbax and restricted the buyers to the role of passive investors in a business actually controlled and conducted by the sellers. They urge that the transaction has characteristics similar to other schemes which the courts have held to be "security" transactions. Thus the sale of chinchillas and their entrustment to the seller for care and sale of the fur (*Hollywood State Bank* v. *Wilde,* 70 Cal.App.2d 103 [160 P.2d 846]), contracts for the purchase of rabbits with the seller's performance of care and marketing (*Gracchi* v. *Friedlander,* 93 Cal.App. 770 [270 P. 235]), and the sale of small parcels of orange groves coupled with a servicing contract (*Securities & Exchange Com.* v. *W. J. Howey Co.,* 328 U.S. 293 [66 S.Ct. 1100, 90 L.Ed. 1244, 163 A.L.R. 1043]), were all held to be sales of securities. In effect, plaintiffs say, the activities of Arbax were hardly different from the sale of commodity futures, in which the buyer has no active role in the cultivation, harvesting, processing or marketing of the crop.

In our view the transaction in suit does not come within the regulatory purpose of the Corporate Securities Law. Plaintiffs did not buy property synthetically divided into small units in order to mask intangible, fractional interests in the total business enterprise of the seller. The subject of sale was a large natural unit of value, that is, 80 acres of growing grapes. Plaintiffs' profit, if any, would be determined by the difference between cost and selling price of this particular 80 acres of grapes, not by fractional participation in the profits or losses of the seller's business operations.

The elements of control were somewhat mixed. Although Arbax undertook to care for the crop until it was ready for harvest, the actual fact was that under normal conditions the grapes needed no care between the time of resale and harvest. Following the disastrous rain of 1961, plaintiffs exercised control to the extent of directing Arbax to apply Captan, a fungicide, to the unharvested grapes at plaintiffs' expense. Under the contracts, plaintiffs had responsibility for harvesting the crop and were not required to designate Arbax to hire the picking crews. It is true that the shipping agreement gave Arbax considerable control over marketing. That arrangement, however, did not have the purpose of preserving the seller's management of an integrated business enterprise in which plaintiffs were passive investors. Its purpose was more simple—to assure Arbax a profit by way of a marketing commission. In composite, these elements demonstrate that plain·

tiffs were relying for their profit on the dual factors of weather and market price, not on the skill and managerial ability of Arbax.

Judgment affirmed.

Pierce, P. J., and Van Dyke, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 17, 1965.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.