[Civ. No. 28052. Second Dist., Div. Three. Jan. 19, 1966.]

WILLIAM V. MARTIN, as Trustee, etc., Plaintiff and Appellant, v. GENERAL FINANCE COMPANY et al., Defendants and Respondents.

Flaxman & Coleman and Howard L. Rosoff for Plaintiff and Appellant.

Rosenfeld & Tucker and Manfred Rosenfeld for Defendants and Respondents.

FORD, J.—This is an appeal from a judgment entered pursuant to an order granting the motion of defendants Nathan Fried and Evelyn Fried, individually and doing business as General Finance Company, a copartnership, for a summary judgment.

On March 1, 1963, William V. Martin, as trustee for the estate of Master Tool and Die, Inc., bankrupt, instituted the action. The first two causes of action of the complaint related to defendants other than the defendants Fried. In the third cause of action it was alleged in part as follows: 1. On or about April 12, 1962, an involuntary petition in bankruptcy was filed against Master Tool and Die, Inc., a corporation, (hereinafter designated as Master), and Master was thereafter adjudged a bankrupt. 2. On or about July 3, 1962, the plaintiff was appointed as trustee in bankruptcy and qualified as such trustee. 3. Prior to the filing of the petition in bankruptcy, Master was engaged in the business of operating a machine shop. 4. Prior to August 28, 1961, the defendant Bernard Theule was the sole stockholder and managing officer of Master. 5. At some time before the latter date, Theule entered into an agreement with the defendants Walter J. Trunick and Ronald Deacon, pursuant to the terms of which Theule sold and transferred to Trunick and Deacon all of his "stockholdings" in Master and those transferees became the sole stockholders of Master. 6. Pursuant to the terms of the agreement, Trunick and Deacon "purportedly pledged assets of the bankrupt corporation for the payment of their personal obligation to Bernard Theule." 7. Theule induced Trunick and Deacon to cause that pledge to be made and further induced Trunick and Deacon "to go to defendant General Finance Company to secure a loan of $10,003.00 and to pledge for said loan the assets" of Master "for the sole and exclusive benefit of defendant Bernard Theule and that said defendant Bernard Theule did in effect receive the sum of $10,003.00 from General Finance Company." 8. The chattel mortgage showed the mortgagors as being Trunick and Deacon,[1] but the defendant General Finance Company

---

[1] The copy of the chattel mortgage attached to the complaint as an exhibit states that the mortgage is made by "Walter J. Trunick &

"did unlawfully and without right bring an action in foreclosure against Master Tool and Die, Inc. and did in said action take possession of and cause to be sold the assets of Master Tool and Die, Inc. satisfying an obligation owed to them by defendants Walter J. Trunick and Ronald Deacon." 9. At the time the defendants Trunick and Deacon executed the chattel mortgage "they did not have any corporate action taken on said matter nor did they present to defendant General Finance Company . . . any corporate resolution authorizing said action . . ., that at the time of the transactions involved herein, to wit, the 28th day of August, 1961, defendants Walter J. Trunick and Ronald Deacon were not members of the Board of Directors of Master Tool and Die, Inc. and had no authority to encumber, pledge, convey or transfer any of the assets of the corporation." 10. At all times the defendant General Finance Company knew that the assets of which that partnership took possession were not the assets of Trunick and Deacon but were in fact the assets of Master, "and did convert said assets for their own benefit and to pay the obligation of defendants Walter J. Trunick and Ronald Deacon." 11. The assets were sold at public sale for the sum of $10,000, which sum was "a reasonable value" thereof.

In the fourth cause of action, the theory of the pleader was that the transaction was not in compliance with the provisions of section 3440 of the Civil Code. The fifth cause of action was one for damages because of the sale of the assets In the sixth cause of action it was alleged that the defendants "fraudulently and willfully conspired to deprive plaintiff's predecessor and its creditors of its assets for their own private and personal benefit."

The motion for summary judgment was made on the ground that the judgment entered in the superior court in the prior action entitled *General Finance Co.* v. *Master Tool & Die, Inc.*, precluded recovery as against the moving parties in the present case under the doctrine of res judicata.

The declaration of Manfred Rosenfeld, one of the attorneys for the moving parties, which was filed in support of the motion, stated that the complaint in the prior action was filed on March 26, 1962, and that the relief therein sought was "the specific return of personal property and to foreclose chattel mortgage"; that on or about March 29, 1962, "a

Ronald Deacon . . . by occupation DBA MASTER TOOL & DIE INC—OWNERS."

claim & delivery levy" was made with respect to the property; and that on May 1, 1962, the court rendered a default judgment against Master, which judgment was entered on June 20, 1962.

A declaration of Thomas Levay was also filed in support of the motion. Therein the declarant stated that on May 1, 1962, as the manager and agent of General Finance Company he took possession of the personal property of Master from the Marshal of the County of Los Angeles and "thereafter sold same as provided under the chattel mortgage."

The declaration of Manfred Rosenfeld contained the name of the prior case, the number it bore in the files of the superior court, the fact of the rendition of the default judgment and the date of entry of that judgment, together with a specification of the book and page of the entry. While a certified copy of the judgment was attached to that declaration, the facts set forth in the declaration itself were sufficient to enable the trial court to take judicial notice of the pleadings[2] and of the judgment in the prior action. (*Stafford* v. *Ware*, 187 Cal.App.2d 227 [9 Cal.Rptr. 706]; *Goldstein* v. *Hoffman*, 213 Cal.App.2d 803, 814 [29 Cal.Rptr. 334].) The power of this court to take judicial notice is the same as that of the trial court. (*Ahlgren* v. *Carr*, 209 Cal.App.2d 248, 257 [25 Cal.Rptr. 887]; Witkin, Cal. Evidence (1958) § 42, p. 56.)

In the complaint in the prior action it was alleged that on or about August 28, 1961, "defendants made, executed, and delivered to plaintiff a promissory note and chattel mortgage, in writing, for the sum of $10,003.00, for value received." A copy of the document embodying the note and chattel mortgage was attached to the complaint and incorporated therein by reference. A default in payment was alleged. It was further alleged that the note provided that in the event of such a default, the plaintiff was entitled to the immediate possession of the property and that the plaintiff elected to take such possession. The prayer was for the recovery of the possession of the property, or of the reasonable value thereof in the event that recovery could not be made; that the defendants be foreclosed of all interest in the property; that the property be sold and the proceeds applied to the payment of the costs and expenses of the action and the

[2] In *Scarbourough* v. *Briggs*, 81 Cal.App.2d 161, at pages 166-167 [183 P.2d 683], this court said: "Upon a plea of res judicata the allegations of the complaint in the prior action and the prayer may be consulted in determining the character of the case and the issues raised."

amount due on the obligation; and that "defendants be adjudged to pay any deficiency that may remain after applying all said money as aforesaid."

The judgment in the prior action was in part as follows: "The defendants, Master Tool & Die, Inc., a corporation, and Geo. R. Deacon . . . also known as Ronald Deacon, having been regularly served with process, having failed to appear and answer the plaintiff's complaint filed herein, and the default of said defendants having been duly entered; and evidence having been introduced in open session of this Court:

"It is therefore ordered, adjudged and decreed that plaintiff recover of and from defendants the possession of the following described property: . . ."

█ The applicability of the doctrine of res judicata with respect to a default judgment is succinctly stated in *Fitzgerald* v. *Herzer*, 78 Cal.App.2d 127, at pages 131-132 [177 P.2d 364]: "By permitting his default to be entered he [the defendant] confessed the truth of all the material allegations in the complaint [citations]. . . . █ A judgment by default is as conclusive as to the issues tendered by the complaint as if it had been rendered after answer filed and trial had on allegations denied by the answer. [Citations.] Such a judgment is res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint. [Citations.]"

█ Except as to the fourth cause of action, the trustee in bankruptcy was seeking to recover the value of property which, he alleged, belonged to Master and had been the subject of conversion by reason of the wrongful acts of the defendants Trunick, Deacon and General Finance Company. He alleged that the assets of Master had been fraudulently mortgaged so as to obtain funds by which Trunick and Deacon could purchase all of the shares of Master stock from Theule. (Cf. *In re Atlas Foundry Co.*, 155 F.Supp. 615.) In *Field* v. *Lew*, 184 F.Supp. 23, at page 26, the court stated: "This action is brought by a trustee in bankruptcy. Section 70, sub. a (5) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a (5), vests in the trustee all rights of action reposing in the corporation at the time the bankruptcy petition was filed. In addition, the trustee may sue to set aside transfers of property that are fraudulent as to creditors under either applicable state law or the federal adaptation of the Uniform

Fraudulent Conveyance Act. See Bankruptcy Act sections 70, subs. a (4), e, 67 sub. d; 11 U.S.C.A. §§ 110, subs. a (4), e, 107, sub. d. See generally 4 Collier, Bankruptcy 1018-25 (14th ed.).'' (See Note, 66 A.L.R.2d 1217, 1225; 9 Am.Jur. 2d, Bankruptcy, § 874.)

In the present case the trustee in bankruptcy in his complaint recognizes the existence of a prior judgment but, in effect, alleges that the legal proceedings culminating in that judgment were fraudulent and collusive and part of the scheme of the parties thereto by which the corporation was deprived of its property. That issue was not, of course, presented to the court in the prior case.

Apt reasoning is found in the case of *Catabene v. Wallner*, 16 N.J. Super. 597 [85 A.2d 300], wherein the trustee in bankruptcy alleged that officers and stockholders of the bankrupt corporation fraudulently combined themselves and illegally caused the property of the corporation to be encumbered by a bond and mortgage given by the corporation to George Heiss, Jr., on January 11, 1949, in lieu of the personal obligation owed to George Heiss, Jr., by John Heiss and Korbin Heiss, well knowing that the corporation did not receive any value or consideration for the execution and delivery of such bond and mortgage. It was also alleged that other named defendants, with full knowledge of the fraudulent acts of the Heisses and in furtherance of the plan to defraud creditors, arranged for and carried through a foreclosure of the mortgage, under which the lands of the corporation, worth approximately $30,000, were sold to one of the defendants, Wallner, for $5,800.

In the *Catabene* case the court stated (85 A.2d, at p. 302): ''The complaint is in a separate and independent suit and does attack the judgment in the foreclosure proceedings. The attack is a collateral attack because any attempt in a separate and independent proceeding to question the integrity and validity of any adjudication in another proceeding and challenge its existence as valid and binding constitutes a collateral attack. 1 Freeman on Judgments (5th ed. 1925) § 304; Restatement, Judgments, § 11, comment a (1942). But all collateral attacks on judgments are not barred. Even though it is a judgment of a legally organized judicial tribunal, proceeding within the scope of its allotted powers and possessing the requisite jurisdiction over the subject-matter of the suit and the parties thereto, it may be collaterally attacked when the judgment is procured through the fraud of either

of the parties or by the collusion of both for the purpose of defrauding a third person. Such third person may escape from the injury thus attempted by showing, even in a collateral proceeding, the fraud or collusion directly affecting him by which the judgment was obtained. 1 Freeman on Judgments, § 318. A judgment obtained in fraud of the interests of a third person is subject to collateral attack by him. Restatement, Judgments, § 91.

"The plaintiff, as trustee in bankruptcy of the corporation, is such a third person who may make a collateral attack on a judgment on the ground that it is fraudulent. The special rights and remedies available to creditors are also available to a trustee in bankruptcy as a primary and not a derivative right. He may avoid any transfer of property by the bankrupt, which any of its creditors might have avoided, and recover property so transferred or its value. *Sickinger* v. *Zimel* (1951) 6 N.J. 149 [77 A.2d 905].

"The fraud is not cloaked with immunity merely because it was perpetrated by means of a legal form; it is just as vulnerable as if perpetrated by a deed or mortgage." (See also Moore, *Res Judicata and Collateral Estoppel in Bankruptcy*, 68 Yale L.J. 1, at pages 4-7 and 41-48; *People* ex rel. *Mosk* v. *Barenfeld,* 203 Cal.App.2d 166, 176-177 [21 Cal. Rptr. 501]; *Leeper* v. *Beltrami,* 53 Cal.2d 195, 205 [1 Cal. Rptr. 12, 347 P.2d 12].)

The existence of the prior judgment did not meet the issue of fraud and collusion raised by the trustee in bankruptcy in his pleading whereby he undertook to avoid the effect of the prior judgment. The trustee, however, did not file any counteraffidavit or declaration. ▇ Consequently, the propriety of the order of the trial court must be viewed in the light of the governing law which is stated in *Goldstein* v. *Hoffman, supra,* 213 Cal.App.2d 803, at pages 810-811, as follows: "The purpose of the summary judgment procedure is to discover, through the media of affidavits, whether the parties possess evidence which demands the analysis of trial. (*Burke* v. *Hibernia Bank,* 186 Cal.App.2d 739, 744 [9 Cal. Rptr. 890]; *Kramer* v. *Barnes,* 212 Cal.App.2d 440, 445 [27 Cal.Rptr. 895]; Code Civ. Proc., § 437c.) ▇ The object of the proceeding is to discover proof. (2 Witkin, Cal. Procedure, pp. 1711-1715.) ▇ A summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of

fact. (*Burke* v. *Hibernia Bank, supra,* pp. 743-744; *Kramer* v. *Barnes, supra,* p. 442.) In the case at bench we do not have any counteraffidavit. We are relegated, therefore, to a determination of whether the affidavit of the respondents is sufficiently supportive of the instant summary judgment. (*Southern Pac. Co.* v. *Fish,* 166 Cal.App.2d 353, 366 [333 P.2d 133].)

 "In order to meet the test of sufficiency and thus place the proceeding in the posture where, in the absence of a counteraffidavit, the trial court would be required to grant the motion for summary judgment, the affidavit of the respondents must satisfy three requirements: (1) It must contain facts sufficient to entitle the moving parties to a judgment, i.e., facts establishing every element necessary to sustain a judgment in their favor; (2) such facts must be set forth with particularity, i.e., all requisite evidentiary facts must be stated, and not the ultimate facts or conclusions of law; and (3) each of the affiants must show that if sworn as a witness she can testify competently to the evidentiary facts contained in the affidavit."

 It is clear that the showing made was not sufficient to entitle the moving defendants to a summary judgment since such showing left untouched the core of the controversy, namely, the issue as to whether the prior judgment was obtained by means of such fraud or collusion as would render ineffective the doctrine of res judicata. Consequently, the judgment cannot stand.

The judgment is reversed.

Shinn, P. J., and Kaus, J., concurred.

A petition for a rehearing was denied February 16, 1966, and respondents' petition for a hearing by the Supreme Court was denied March 16, 1966.