[Civ. No. 14067. Third Dist. Feb. 15, 1974.]

HAMILTON JEWELERS, Plaintiff and Respondent, v.
DEPARTMENT OF CORPORATIONS et al.,
Defendants and Appellants.

### Counsel

Evelle J. Younger, Attorney General, and Walter J. Wiesner, Deputy Attorney General, for Defendants and Appellants.

Richard M. Buxbaum as Amicus Curiae on behalf of Defendants and Appellants.

Arnold, Brownston & White and John Brownston for Plaintiff and Respondent.

### Opinion

**JANES, J.**—Defendants, the state Department of Corporations and its commissioner (hereinafter, collectively, "the Department"), appeal from a declaratory judgment that a diamond sales promotional plan which was advertised and successfully used by plaintiff Hamilton Jewelers (herein-

after, "Hamilton") did not constitute the offer or sale of a "security" as defined in section 25019 of the Corporations Code.[1]

## FACTS

The relevant facts are undisputed.

Hamilton operates a retail jewelry business in Sacramento County. In September 1971, by newspaper advertisement, Hamilton offered for sale to the general public a selected group of unmounted diamonds ordinarily sold at prices of $500 or more.

In relevant part, the newspaper advertisement stated: "Hamilton Jewelers invites you to invest in a ONE CARAT DIAMOND for only $500, and if anytime [*sic*] within a three year period you elect to return the Stone, Hamilton will return to you the full purchase price *plus 5% interest* calculated daily from the date of purchase. [¶] A diamond investment of $500 will return $578.81 in cash at the end of a three year period." (Italics added.)

Sales were transacted in accordance with the advertisement. Each purchaser received a written warranty which reiterated the terms of the advertisement and imposed no further conditions.

Shortly after publication of the advertisement, the Department notified Hamilton by letter and interpretive opinion (Cal. Admin. Code, tit. 10, § 250.12) that, in the Department's view, the advertisement constituted the offer of a "security" within the meaning of section 25019. Hamilton then filed suit for declaratory relief.

## CONTENTIONS

With exceptions not here relevant, section 25019 provides: " 'Security' means any note; stock; treasury stock; membership in an incorporated or unincorporated association; bond; debenture; *evidence of indebtedness;* certificate of interest or participation in any profit-sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; *investment contract;* voting trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease; any beneficial interest or other security issued in connection with

---

[1]Section 25019 is part of the Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.), which generally imposes qualification requirements upon the offer or sale in this state of any nonexempt security (§ 25110). The administration and civil enforcement of the Corporate Securities Law are the responsibility of the Department. (Corp. Code, §§ 25005, 25530, 25600.)

a funded employees' pension, profit sharing, stock bonus, or similar benefit plan; or, in general, any interest or instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. All of the foregoing are securities whether or not evidenced by a written document. . . ." (Italics added.)

■ The Department contends that Hamilton's public offering, as set forth in its newspaper advertisement, constituted the offer of a security in the form of an "evidence of indebtedness" or "investment contract." The contention fails.

The draftsmen of the state Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.) have declared that the definition of "security" in section 25019 has the following sources: Section 401, subdivision (1), of the Uniform Securities Act (7 U.L.A. 746)[2]; section 2, subdivision 1, of the federal Securities Act of 1933 (15 U.S.C. § 77b, subd. 1); and former sections 25004 (defining "trust") and 25008 (defining "security") of the state Corporations Code. (Marsh & Volk, Practice Under the Cal. Corporate Securities Law of 1968 (1969), ch. 5, § 16, p. 178, and Draftsmen's Commentary, App. A, p. 512.) The sections cited in the uniform and federal acts, as well as former section 25008, all include the terms "evidence of indebtedness" and "investment contract" within the definition of "security." In those respects, the uniform act copied the federal definition. (Commissioners' Note, 7 U.L.A. 749.) Accepting the draftsmen's statement that section 25019 is modeled after section 2, subdivision 1, of the Securities Act of 1933, decisions interpreting the federal definition are authoritative in resolving the issues presented by the case at bench. (See *Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905]; *Innes* v. *McColgan* (1941) 47 Cal.App.2d 781, 784 [118 P.2d 855].)[3]

---

[2]The Uniform Securities Act has not been adopted in California. (7 U.L.A. 1973 Supp., p. 102.)

[3]We note, however, that comparable California legislation included "evidence of indebtedness" and "investment contract" within the definition of "security" long *prior* to the enactment of the Securities Act of 1933, and the federal definition of "security" appears to have been patterned after already-existing "blue sky" laws in the several states. (See Stats. 1913, ch. 353, § 2, p. 715; Stats. 1917, ch. 532, § 2, p. 674; Stats. 1929, ch. 707, § 1, p. 1252; *S.E.C.* v. *Howey Co.* (1946) 328 U.S. 293, 298 [90 L.Ed. 1244, 1249, 66 S.Ct. 1100, 163 A.L.R. 1043]; Commissioners' Note, 7 U.L.A. 749.) Be that as it may, it is nonetheless proper to look to decisions interpreting the federal definition for guidance. (See 50 Am.Jur., Statutes, § 323, p. 315.)

Cases interpreting the uniform act are likewise persuasive (*People's F. & T. Co.* v. *Shaw-Leahy Co.* (1931) 214 Cal. 108, 109 [3 P.2d 1012]); and, of course, there is a strong presumption that section 25019 was intended by the Legislature to embrace the prior judicial construction of former section 25008 (*State of California* ex rel. *Dept. of Employment* v. *General Ins. Co.* (1970) 13 Cal.App.3d 853, 860 [96 Cal.Rptr. 744]).

Under the Securities Act of 1933, "[t]he term 'evidence of indebtedness' is not limited to a promissory note or other simple acknowledgment of a debt owing and is held to include all contractual obligations to pay in the future for consideration presently received." (*United States* v. *Austin* (10th Cir. 1972) 462 F.2d 724, 736; cf., *United States* v. *Jones* (5th Cir. 1971) 450 F.2d 523, 525.) For the purposes of the same act, "an investment contract . . . means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." (*S.E.C.* v. *Howey Co.* (1946) 328 U.S. 293, 298-299 [90 L.Ed. 1244, 1249, 66 S.Ct. 1100, 163 A.L.R. 1043].)

Taken literally, the term "evidence of indebtedness" might seem plainly applicable to the newspaper advertisement and written warranty setting forth Hamilton's promise to pay its customer, at the latter's option, a full refund of the purchase price, plus 5 percent interest, upon return of the diamond within the specified three-year period. Similarly, from the standpoint of the customer who purchases the diamond with the preconceived intention of exercising his option and receiving a profit of 5 percent interest, the transaction might also seem to be an "investment contract." As said in *State* v. *Hawaii Market Center, Inc.* (1971) 52 Hawaii 642, at page 651 [485 P.2d 105, at page 110, 47 A.L.R.3d 1366], involving an investment contract under the Hawaii Uniform Securities Act (Modified), "It should be irrelevant to the protective policies of the securities laws that the inducements leading an investor to risk his initial investment are founded on promises of fixed returns rather than a share of profits. . . . The unwary investor lured by promises of fixed fees deserves the same protection as a participant in a profit sharing plan. For this reason courts have avoided a narrow definition of 'profits.' "

However, as this court pointed out in *Sarmento* v. *Arbax Packing Co.* (1964) 231 Cal.App.2d 421, at page 424 [41 Cal.Rptr. 869], "No hard and fast rule fixes that which constitutes a 'security.' Rather, the question is determined on a case by case basis. *The crucial question is whether the*

*transaction comes within the regulatory purpose of the Corporate Securities Law."* (Italics added.) In so stating, we cited *Silver Hills Country Club* v. *Sobieski* (1961) 55 Cal.2d 811, at page 814 [13 Cal.Rptr. 186, 361 P.2d 906, 87 A.L.R.2d 1135], where the state Supreme Court pursued the same "crucial question" despite the fact that the transaction there involved came within the *literal* statutory definition of "security" (former Corp. Code, § 25008).

The purpose of the Corporate Securities Law (former Corp. Code, § 25000 et seq.) was explained by the court in *Silver Hills Country Club* v. *Sobieski, supra,* 55 Cal.2d 811, as follows: "Section 25008 defines a security broadly to protect the public against spurious schemes, however ingeniously devised, to attract *risk capital.*" (*Id.* at p. 814.) (Italics added.) "Since the act does not make profit to the supplier of capital the test of what is a security, it seems all the more clear that its objective is to afford those who *risk their capital* at least a fair chance of realizing their objectives in legitimate ventures whether or not they expect a return on their capital in one form or another." (*Id.* at p. 815.) (Italics added.)

Thus California follows the "risk capital" approach in ascertaining whether a transaction involves a "security" within the meaning of the Corporate Securities Law. (Accord, *State* v. *Hawaii Market Center, Inc., supra,* 52 Hawaii at pp. 648-649 [485 P.2d at p. 109].)

The instant case is without reported judicial precedent[4] in that here the trial court expressly found that the diamonds in question "are ordinarily sold at prices of $500.00 or more." This finding is unassailed by the Department; indeed, the finding was proposed by the Department in its objections to findings proposed by Hamilton. Since, if reasonably possible, we must resolve any uncertainty or ambiguity in the finding in such a way as to support the judgment (*Brown* v. *World Church* (1969) 272 Cal.App.2d 684, 692 [77 Cal.Rptr. 669, 45 A.L.R.3d 622]; *Reinsch* v. *City of Los Angeles* (1966) 243 Cal.App.2d 737, 746 [52 Cal.Rptr. 613]), we construe the finding to be a determination of the *fair market*

---

[4]We have examined the numerous cases cited by Hamilton and the Department, and find those decisions to be distinguishable on their facts. Contrary to the implication of the Department's opening brief (p. 20), the Securities and Exchange Commission administrative opinions summarized therein were rendered without citation of authority (i.e., *Investment Diamonds, Inc.,* CCH Fed. Sec. L. Rep. 71-72 Decisions, ¶ 78,350, p. 80,806; *Longines Symphonette Society,* CCH Fed. Sec. L. Rep. 72-73 Decisions, ¶ 79,151, p. 82,504). Moreover, this court is bound by the "risk capital" test enunciated in *Silver Hills Country Club* v. *Sobieski, supra,* 55 Cal.2d 811. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

*value* of the individual gems if sold *without* the full-refund-plus-interest warranty.

Consequently, the purchase price advertised in connection with the warranty ($500) was no greater than the value of the diamond which would serve, in effect, as security for the refund of the purchase price if the customer sought reimbursement. The customer, being adequately secured, would have placed no "risk capital" with Hamilton; and, therefore, the transaction would not come within the regulatory purpose of the Corporate Securities Law even though 5 percent interest might ultimately be paid to the customer.[5]

The fully secured status of the investor in Hamilton's promotional plan distinguishes this case from others where *unsecured* or *under*-secured promissory notes bearing fixed rates of interest have been held to be securities within the meaning of legislation similar to the Corporate Securities Law of 1968. (See *People* v. *Walberg* (1968) 263 Cal.App.2d 286, 294 [69 Cal.Rptr. 457]; *People* v. *Leach* (1930) 106 Cal.App. 442, 448-450 [290 P. 131], approved in *In re Leach* (1932) 215 Cal. 536, 546 [12 P.2d 3].) Moreover, this case is unlike *State* v. *Hawaii Market Center, Inc., supra,* 52 Hawaii 642 [485 P.2d 105], where the sums invested were disproportionately greater than the wholesale value of the merchandise purchased. (*Id.* at pp. 649-650 [485 P.2d at pp. 109-110].)

The judgment is affirmed.

Richardson, P. J., and Regan, J., concurred.

A petition for a rehearing was denied March 13, 1974, and appellants' petition for a hearing by the Supreme Court was denied May 1, 1974. Wright, C. J., and Sullivan, J., were of the opinion that the petition should be granted.

---

[5]It is admitted in the Department's answering pleading that Hamilton proposed to deposit into a trust account one-fifth of the proceeds of all sales effected pursuant to its advertisement, to assure payment to the "minor number" of purchasers who it was anticipated would exercise their refund options. The admitted fact is irrelevant to our decision.