[No. E001262. Fourth Dist., Div. Two. Feb. 6, 1985.]

JESUS V. LEYVA et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
ORANGE COAST TITLE COMPANY et al., Real Parties in Interest.

**COUNSEL**

Klitgaard & Jones and R. J. Klitgaard for Petitioners.

No appearance for Respondent.

Loeb & Loeb, Robin Meadow, Peter N. Scolney, Gibson, Dunn & Crutcher, Richard G. Duncan, Jr., and J. Michael Brennan for Real Parties in Interest.

**OPINION**

**MORRIS, P. J.**—Petitioners, Jesus V. Leyva et al., seek review of an order denying summary adjudication that assignments of fractional interests in promissory notes, secured by trust deeds, constituted securities.

FACTS

On September 16, 1983, the superior court made and entered an "Order Re Class Certification." The class certification order made the following

finding: "The Complaint . . . alleges that the defendants [real parties in interest, Orange Coast Title Company and Title Insurance Company of Minnesota], with the intention to deceive or defraud, materially assisted Wayne Burton in [the] sale of what are allegedly fraudulent securities to the plaintiff class in violation of California Corporations Code section 25504."

The original class certification order defined the class in part as parties who "purchased promissory notes from Wayne Burton . . . under his name or under the names of Universal Financial or California Equities Home Loan . . . which were ostensibly secured by the assignment of fractionalized interests in deeds of trust in which Burton identities were both the trustor and beneficiary . . . ."

Finally, the class certification order limited the issues to be tried on a class basis. The existence of a security was one of those issues, and was phrased by the court as follows: "Did the promissory note and the assignment to a class member of a fractionalized interest in a deed of trust as security for said promissory note constitute a security within the meaning of Section 25019 of the California Corporations Code?"

Petitioners moved for summary adjudication that the instruments here did constitute securities. They submitted four declarations in support of their motion. Based on personal knowledge, these declarations stated that: (1) petitioners purchased promissory notes in exchange for personal or cashier's checks made to the order of one of the real parties in interest; (2) petitioners were requested to sign a loan funding procedure; (3) petitioners received an alleged assignment of a fractional interest in a deed of trust as collateral security; (4) petitioners were given a copy of an alleged borrower note secured by the deed of trust. The instruments referred to were attached as exhibits. Petitioners also submitted a copy of a federal complaint and federal judgment, and a California cease and desist order for judicial notice. Real parties in interest submitted no affidavits or declarations.

The court denied the motion for summary adjudication, finding as material triable controversies, (a) whether the collateral security was adequate and (b) whether the investors depended on the promoter's success for a return on investment. This petition for a writ of mandate followed.

DISCUSSION

I.

Real parties in interest initially contend that the writ of mandate should be denied on the procedural ground that petitioners failed to demonstrate the absence of an adequate remedy at law. We disagree.

In general terms, Code of Civil Procedure sections 1086 and 1103 state that seeking a writ is appropriate ". . . in all cases where there is not a plain, speedy and adequate remedy . . .," in the ordinary course of the law. In addition, Code of Civil Procedure section 437c, subdivision (*l*), explicitly allows a petition for a writ upon the denial of a motion for summary judgment.

Although the availability of an action at law or in equity normally precludes resort to the writ of mandate (*Irvine* v. *Gibson* (1941) 19 Cal.2d 14, 16 [118 P.2d 812]; *Keyston* v. *Banta-Carbona Irr. Dist.* (1937) 19 Cal.App.2d 384 [65 P.2d 371]), courts generally consider the merits of a writ based upon a denial of summary judgment (*Roman Catholic Archbishop* v. *Superior Court* (1971) 15 Cal.App.3d 405, 410 [93 Cal.Rptr. 338]; *Bank of America* v. *Superior Court* (1970) 4 Cal.App.3d 435, 441 [84 Cal.Rptr. 421]; *Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 265-266 [83 Cal.Rptr. 237]). One purpose of summary judgment is to provide a speedy legal resolution of uncontested facts; ". . . a denial of [summary judgment] when it should as a matter of law have been granted should open the door to an equally speedy review of the matter." (*Bank of America* v. *Superior Court, supra,* 4 Cal.App.3d at p. 441.) Because there is no appeal from a denial of summary judgment (*Bricklayers & Masons Union No. 1* v. *Superior Court* (1963) 216 Cal.App.2d 578, 582 [31 Cal.Rptr. 115]), the writ is the only speedy review available.[1]

## II.

Petitioners contend that the trial court erred in denying their motion for an order summarily adjudicating that assignments of fractional interests in notes and deeds of trust constituted securities. We disagree.

■ " 'Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ■ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ■ In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his

---

[1]Real parties in interest also contend that petitioners' writ of mandamus should be denied because they failed to allege facts showing that they did not have a plain, speedy, and adequate remedy, in the ordinary course of the law. (See *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 370 [217 P.2d 951].) Petitioners did allege, however, that their motion for summary judgment was denied. Without deciding whether such an allegation is sufficient, we decline to deny the writ on this procedural issue.

opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. ■ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.' (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 . . .; see *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 146-148 . . . .)" (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], fn. omitted.)

■ In the instant case we do not have any counteraffidavits. Therefore, we need only determine whether the affidavits of the petitioners in support of their motion for summary adjudication of the securities issue, strictly construed, are sufficient to sustain a judgment in their favor. (*Koret of Cal., Inc.* v. *City etc. of San Francisco* (1969) 2 Cal.App.3d 87, 89 [81 Cal.Rptr. 698]; *Martin* v. *General Finance Co.* (1966) 239 Cal.App.2d 438, 446 [48 Cal.Rptr. 773]; *Goldstein* v. *Hoffman* (1963) 213 Cal.App.2d 803, 810 [29 Cal.Rptr. 334].) ■ To be sufficient, by admissible facts the petitioners must establish every element necessary to a favorable decision. (*Martin* v. *General Finance Co., supra,* 239 Cal.App.2d at p. 446; *Goldstein* v. *Hoffman, supra,* 213 Cal.App.2d at p. 811.)

In addition to affidavit, admissible facts may be provided by declaration (*Zemelman* v. *Boston Ins. Co.* (1970) 4 Cal.App.3d 15, 19 [84 Cal.Rptr. 206]), and by judicial notice (*McKinney* v. *County of Santa Clara* (1980) 110 Cal.App.3d 787, 794 [168 Cal.Rptr. 89]). Reasonable inferences from admissible evidence are also admissible. (Code Civ. Proc., § 437c, subd. (c).)

## III.

■ Undisputed declarations established that petitioners received alleged assignments of fractional interests in notes and deeds of trust from real parties in interest. Petitioners contend because the complaint alleged securities fraud that these assignments, standing alone, constituted securities as a matter of law, and that the trial court should have summarily adjudicated this issue accordingly.

Section 25019 of the Corporations Code[2] states in relevant part that: " 'Security' means *any* note; stock; . . . evidence of indebtedness; . . . collateral trust certificate; . . . investment contract; . . . or in general, any

---

[2]Hereinafter, all code references are to the Corporations Code unless otherwise indicated.

interest or instrument commonly known as a 'security' . . . ." (Italics added.)

Regardless of the type of securities law violation involved, all California courts, and virtually all federal courts, have rejected a literal interpretation of section 25019 and the equivalent federal statutes.[3] (See *Silver Hills Country Club* v. *Sobieski* (1961) 55 Cal.2d 811, 814 [13 Cal.Rptr. 186, 361 P.2d 906, 87 A.L.R.2d 1135]; *People* v. *Davenport* (1939) 13 Cal.2d 681, 685-686 [91 P.2d 892]; *People* v. *Schock* (1984) 152 Cal.App.3d 379, 385 [199 Cal.Rptr. 327]; *Hamilton Jewelers* v. *Department of Corporations* (1974) 37 Cal.App.3d 330, 334-335 [112 Cal.Rptr. 387]; *United Housing Foundation, Inc.* v. *Forman* (1975) 421 U.S. 837, 851-852 [44 L.Ed.2d 621, 631-632, 95 S.Ct. 2051].) " '[I]t plainly was not the legislative intent that *"every"* note or evidence of indebtedness, regardless of its nature and of the circumstances surrounding its execution, should be considered as included within the meaning and purpose of the act.' " (*People* v. *Schock, supra,* 152 Cal.App.3d at p. 385, quoting *People* v. *Davenport, supra,* 13 Cal.2d at p. 686.)

■ "Thus, the determination of whether a particular instrument constitutes a security must be made on an ad hoc basis upon a review of the surrounding facts and circumstances and in light of the regulatory purposes to be served under the Corporate Securities Law." (*Ibid.*; see *People* v. *Skelton* (1980) 109 Cal.App.3d 691, 714 [167 Cal.Rptr. 636]; *Sarmento* v. *Arbax Packing Co.* (1964) 231 Cal.App.2d 421, 424 [41 Cal.Rptr. 869].) This determination is to be made as a matter of law. (*People* v. *Skelton, supra,* 109 Cal.App.3d at pp. 712-713.) ■ The basic regulatory purpose of the Corporate Securities Law is to ". . . protect the public against spurious schemes, however ingeniously devised, to attract risk capital." (*Silver Hills Country Club* v. *Sobieski, supra,* 55 Cal.2d at p. 814; see *Hamilton Jewelers* v. *Department of Corporations, supra,* 37 Cal.App.3d at p. 335.)

■ The California "risk capital" test generally defines a superficial loan transaction as a security if investors are dependent on the promoter's success for a return on the investment; and courts will find dependency where the investors receive inadequate collateral, because they then necessarily become dependent upon the promoter's success. (*People* v. *Schock, supra,* 152 Cal.App.3d at p. 386; *People* v. *Leach* (1930) 106 Cal.App.

---

[3]Only the Second Circuit employs even a qualified literal test: "[A]ll 'notes' should be considered securities . . . unless the note bears 'a strong family resemblance' to an enumerated list where the context of the transaction required an exception." (*Amfac Mtg. Corp.* v. *Arizona Mall of Tempe* (9th Cir. 1978) 583 F.2d 426, 431, fn. 6, citing *Exchange Nat. Bank of Chicago* v. *Touche Ross & Co.* (2d Cir. 1976) 544 F.2d 1126, 1138.)

442, 449-450 [290 P. 131], approved in *In re Leach* (1932) 215 Cal. 536, 546 [12 P.2d 3].) On the other hand, "[t]he mere expectation of a return on an investment, together with the right of repayment, does not—without more—subject the transaction to security regulation." (*People* v. *Schock, supra,* 152 Cal.App.3d at p. 386; see *People* v. *Davenport, supra,* 13 Cal.2d at p. 690.)

The two factual questions that prevented the trial court from awarding summary judgment here are, in varying degrees, also a part of the federal judicial test of a security. The federal test of a security, although somewhat different in content,[4] is persuasive to California courts because the California Corporate Securities Law was modeled after the Securities Act of 1933. (*Hamilton Jewelers* v. *Department of Corporations, supra,* 37 Cal.App.3d at p. 333.) "The touchstone [of the federal test] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entreprenuerial or managerial efforts of others." (*United Housing Foundation, Inc.* v. *Forman, supra,* 421 U.S. at p. 852 [44 L.Ed.2d at p. 632]; see *Securities and Exchange Com'n.* v. *Howey Co.* (1946) 328 U.S. 293, 301 [90 L.Ed. 1244, 1251, 66 S.Ct. 1100, 163 A.L.R. 1043].) Although infrequently, the adequacy of the collateral protecting the investor from loss has also been considered by some federal courts in determining the existence of reliance on the managerial efforts of others. (See *United States* v. *Carman* (9th Cir. 1978) 577 F.2d 556, 563; *Amfac Mtg. Corp.* v. *Arizona Mall of Tempe, supra,* 583 F.2d at p. 432 (applying risk capital test).) Also, the federal test sometimes employs a rough equivalent of collateral, the *solvency* of the managing group, as a factor in determining if securities are being traded. (*People* v. *Schock, supra,* 152 Cal.App.3d at p. 388; *United States* v. *Farris* (9th Cir. 1979) 614 F.2d 634, 641.)

 Petitioners contend that the statement of state and federal law set forth above is accurate only for causes of action seeking to "regulate" securities, not for causes of action based in fraud. Petitioners' legal theory is that in securities fraud cases fractional interests in notes and trust deeds, standing alone, constitute securities, because section 25019 must be interpreted literally in securities fraud cases.

Petitioners' dual-definition theory is not supported by the law. Petitioners cite no cases, nor has our independent research uncovered any, that hold

[4]The federal test used in most jurisdictions, unlike the risk capital test of California, requires an "expectation of profits" before instruments will be classified as securities. (*United Housing Foundation, Inc.* v. *Forman, supra,* 421 U.S. at p. 854 [44 L.Ed.2d at p. 633].) For a description of the variations of the federal test employed by the different circuits, see *Amfac Mtg. Corp.* v. *Arizona Mall of Tempe, supra,* 583 F.2d at page 431, footnote 6.

that a "note," or any other instrument listed in section 25019, is by definition a security *because* the cause of action is one of fraud. In contrast, the literal test suggested by petitioners has been rejected in a number of cases where fraud was alleged. (See, e.g., *People* v. *Schock, supra,* 152 Cal.App.3d at pp. 382, 385; *United Housing Foundation, Inc.* v. *Forman, supra,* 421 U.S. at pp. 844, 848 [44 L.Ed.2d at pp. 629-630].)

Petitioners contend that *Schock* supports their dual-definition theory. We disagree. *Schock* analyzed whether a fractional interest in a promissory note secured by a trust deed constituted a nonexempt security and thus was subject to "regulatory" section 25110 (unlawful sale of unqualified security) and "fraud" section 25401 (false statement in a security transaction). (*People* v. *Schock, supra,* 152 Cal.App.3d at pp. 382-383.) Nevertheless, *Schock* did not apply the literal definition petitioners' theory would hold applicable merely because fraud was alleged. Instead, holding that ". . . a literal interpretation [of section 25019] has been uniformly eschewed when to do so would appear to exceed any legitimate legislative purpose" (*id.,* at pp. 384-385), *Schock* applied both the risk capital and federal tests (*id.,* at pp. 385-389).

*Schock* concluded that the instruments it evaluated, which were similar to those in the instant case, were securities, but only after determining that ". . . investors . . . relied upon the skill, services and solvency of GSHL to protect their investments." (*Id.,* at pp. 388-389.)[5] Critically, because of these facts, defining the instruments as securities served ". . . the regulatory purposes . . . under the Corporate Securities Law." (*Id.,* at p. 385.)

Petitioners contend, however, that *Schock*'s discussion of the risk capital and federal tests in determining what constitutes a security was "merely introductory," and that in its subsequent holding *Schock* in fact applied a literal interpretation of section 25019 in determining that the notes involved were securities.

The portion of *Schock* characterized by petitioners during oral argument as "merely introductory" and "historical" was in fact a detailed analysis and application of the risk capital and federal tests of what constitutes a security. (*Id.,* at pp. 384-389.) After applying these tests and finding the instruments before it to be securities, *Schock* went on to examine whether

---

[5]*People* v. *Leach, supra,* 106 Cal.App. 442, cited by plaintiffs for the proposition that "[p]ublicly distributed mortgage notes have been held to be 'securities' by the Supreme Court for more than 50 years," applies an analysis similar to that of *Schock.* In *Leach* the court found mortgage notes to be securities only after "[l]ooking through the form of the transactions," and finding inadequate collateral. (*People* v. *Leach, supra,* 106 Cal.App. at p. 449.)

an exemption applied. The potential exemption was only for a promissory note that was " '. . . not one of a series of notes secured by interests in the same real property.' [Citation.]" (*Id.*, at p. 389.) Accordingly, *Schock* held: "By implication, a promissory note which *is* one of a series of notes secured by the same real property is not exempt and *is* a security." (*Ibid.*) Later, the court reiterated that: "Since the secured transactions under review are not accorded exempt status, they are by definition 'securities' within the meaning of section 25019." (*Id.*, at p. 390.) In context, these statements could only have meant that the notes were securities because the exemption did not apply *and* because the court had already determined that the risk capital or federal test of what is a security within the meaning of section 25019 had been satisfied.

Nevertheless, petitioners mistakenly interpret the language just quoted as a holding by *Schock* that section 25019 should be applied literally to fractional interests in promissory notes, at least where fraud is alleged. Such an interpretation ignores the fact that *Schock* attributed no special importance to the fraud allegation before it. More importantly, it ignores the failure of *Schock* to state directly that it was discarding the risk capital and federal tests, on which the bulk of the opinion focused, in favor of a literal test of what constitutes a security. Indeed, if *Schock* intended to apply literally the verbage of section 25019, it should simply have stated that the "notes" were securities within the *terms* of section 25019. Instead, *Schock* concluded that the notes it considered were " 'securities' within the *meaning* of section 25019" (*id.*, at p. 390, italics added), the same language the court used earlier in applying the federal test (*id.*, at p. 389).

Notwithstanding *Schock,* petitioners insist that "regulatory purposes" are distinguishable from "prohibited transactions," such as fraud, to which the definition set forth in section 25019 allegedly has a different, or literal meaning. This unsubstantiated contention is unsupported by the definition of the term regulate: "[T]o govern or direct according to rule . . . [or] law . . . ." (Webster's Third New Internat. Dict. (1961) p. 1913.) Applying this definition, prohibiting a party from engaging in fraud is merely a method of regulating a transaction.

Moreover, state and federal statutory law applies the same or virtually the same definition of security to both nonfraud and fraud provisions. The California Corporate Securities Law, section 25000 et seq., regulates everything from registration to fraud, but only provides one definition of securities. Section 25019 defines "security," and section 25001 states, "[u]nless the context otherwise requires, the definitions in this part apply throughout this division." The principal federal securities laws are found in two different acts, the 1933 act, which generally concerns registration (15 U.S.C.

§ 77a et seq.), and the 1934 act, which generally concerns fraud (15 U.S.C. § 78a et seq.), and the respective definitions of security are worded somewhat differently. Nevertheless, federal courts consider the definitions virtually identical, and apply the identical legal analysis, discussed above, to both. (*Great Western Bank & Trust* v. *Kotz* (9th Cir. 1976) 532 F.2d 1252, 1255-1258; *Bellah* v. *First National Bank of Hereford, Texas* (5th Cir. 1974) 495 F.2d 1109, 1111-1113.)

IV.

We reject petitioners' legal theory that standing alone fractional interests in promissory notes secured by deeds of trust are securities per se because in a cause of action based in fraud the terms of section 25019 are to be applied literally; nevertheless, the interests here may still be securities under the risk capital or federal test. We next turn to the undisputed facts offered by petitioners to see if they support summary adjudication of this issue.

Petitioners moved for summary adjudication of the securities issue based on four declarations, which alleged the following facts: (1) petitioners purchased promissory notes in exchange for personal or cashier's checks made to the order of one of the real parties in interest; (2) petitioners were requested to sign a loan funding procedure; (3) petitioners received an alleged assignment of a fractional interest in a deed of trust as collateral security; and (4) petitioners were given a copy of an alleged borrower note secured by the deed of trust.

Petitioners failed to submit declarations to the court or argue on appeal pursuant to the risk capital test that the management of the real parties in interest was relied upon, or that the collateral of the real parties in interest was inadequate. Nor did petitioners submit declarations or argue pursuant to the federal test that the "skill, services and solvency" of the real parties in interest were "relied upon . . . to protect their investments." (*People* v. *Schock, supra,* 152 Cal.App.3d at p. 388.)

Petitioners' declarations, however, disclose at least one possibly salient fact: the number of fractional interests in the trust deeds. In particular, the interest in one of the trust deeds was fractionalized among more than 200 investors. The question for purposes of this writ is whether such fractionalization necessarily results in reliance on the managerial skills of real parties in interest or causes the collateral to be inadequate. As pointed out by petitioners, the California Administrative Code suggests that merely selling notes or interests to more than 10 persons implicates the purposes of the Corporate Securities Law. (Cal. Admin. Code, tit. 10, § 260.105.30, subd.

(e)(1).) In contrast, *Schock* was not persuaded by the ". . . argument that the fact of fractional interests in the trust deeds in proportion to the individual investments renders the collateral illusory since no investor retains actual control without agreement, or adjudication of rights, of all the affected investors." (*People* v. *Schock, supra,* 152 Cal.App.3d at p. 387.) Although the factual record here raises the issue, it does not provide sufficient information to enable us to properly consider whether extensively fractionalized interests in trust deeds alone may satisfy the risk capital or federal tests for determining what constitutes a security.

Because the declarations standing alone do not demonstrate sufficient relevant facts, summary adjudication in favor of petitioners on the securities issue was properly refused.[6] (See *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc., supra,* 4 Cal.3d at pp. 851-852; *Koret of Cal., Inc.* v. *City etc. of San Francisco, supra,* 2 Cal.App.3d at p. 89.)

### DISPOSITION

The writ is denied.

Rickles, J., and Simmons, J.,* concurred.

---

[6]Plaintiffs also submitted a copy of a federal complaint, federal judgment and California cease and desist order to the trial court for judicial notice. Even if these documents were judicially noticed, they lack sufficient relevance to favorably resolve the issue. The federal judgment states "that defendants have not admitted or denied the allegations in the complaint except as to jurisdiction of [the] court. . . ." The federal complaint and California cease and desist order represent only the opinions of government agencies.

*Assigned by the Chairperson of the Judicial Council.