[No. B029874. Second Dist., Div. Six. Nov. 3, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
JERRY DONALD SMITH, Defendant and Appellant.

**[Opinion certified for partial publication.‡]**

‡ Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions of this opinion to be published follow.

**COUNSEL**

Hager, Oakes & Mausert and Mark Mausert for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Donald J. Oeser and William V. Ballough, Deputy Attorneys General, for Plaintiff and Appellant.

**OPINION**

**GILBERT, J.**—Here we hold* that the definition of a security in California does not depend upon whether or not it is exempt from qualification under the California Corporate Securities Act.

Jerry Donald Smith was convicted of two counts of violating Penal Code section 487, subdivision 1 (grand theft) and two counts of violating Corporations Code section 25401 (securities fraud). We affirm.

On the People's cross-appeal, we affirm dismissal of two counts alleging securities fraud. Smith may not be held criminally liable for failing to inform potential investors about a prior misdemeanor conviction which was expunged and dismissed pursuant to Penal Code section 1203.4.

FACTS

Jerry Donald Smith was president of National Pacific, a general partnership which managed real estate limited partnerships organized by Smith.

Count I (grand theft): In October 1982 Smith offered investors a limited partnership in the Hilltop Ranch, a 2,700-acre farm in Idaho. The purchase price of $1,135,000 included rights to sufficient water to farm the portion of

---

*See footnote, *ante,* page 230.

the ranch already under cultivation, and future water rights to farm the rest.

Smith and National Pacific, as general partners in Hilltop, offered 70 limited partnership units at $10,000 per unit, with $5,000 down. The balance was in the form of demand promissory notes. The purchase agreement with the seller of Hilltop required that Smith deposit $79,000 into escrow by January 17, 1983. Of that $79,000, a portion was to be in the form of a credit to Smith for a real estate commission for the transaction. Smith and National Pacific were to assume an existing first mortgage and execute a note in favor of the sellers for the balance.

Smith received approximately $100,000 in cash from Hilltop investors, which he deposited into a general operating checking account for National Pacific. Smith also purported to transfer into this account about $335,000 on behalf of Hilltop investors, from other accounts these investors held with National Pacific. The investors were not told that these accounts no longer had funds. Smith did not establish a separate account for the Hilltop partnership, and the funds in the general operating account were used for a variety of expenses, including those not related to the Hilltop partnership. The checks Smith wrote into escrow for Hilltop were dishonored by his bank, and Smith eventually accepted cancellation of the escrow in December 1983.

Despite this state of affairs, Smith notified the Hilltop investors that he made a down payment of $132,000 on the property. At a meeting of Hilltop investors, Smith recommended that the investors void the purchase agreement because of water rights problems. He never told the investors that he deposited their funds into the National Pacific account and not into the Hilltop escrow.

After the purchase agreement was rescinded, Smith sent Hilltop investors a questionnaire asking if they wished to have their money returned or invested in other properties. Smith did not return any of the funds asked for by investors, but purportedly invested the funds, without the permission of some investors, into other National Pacific properties such as the Jolon Ranch, located in Santa Barbara County. These other investments were never credited with the Hilltop funds. Smith told Hilltop investors that their money was tied up for six or seven months in an escrow account, that a substantial amount had been used for expenses, and that they would be repaid in installments over a period of months or years.

Those investors who approved of the purported transfer of Hilltop escrow funds into other investments testified they would not have done so had

they known there were no Hilltop funds available to make the downpayment.

Count II (securities fraud): The prospectus for the Hilltop limited partnership and the partnership agreement provided that Hilltop funds would be kept in a separate account and not commingled. Smith deposited Hilltop investors' funds into the National Pacific general operating checking account from which the expenses of all partnerships were paid. Smith's accountant advised him that such commingling was improper. The Hilltop investors did not authorize the commingling and believed that their funds were used solely for the purchase of the property.

Count III (securities fraud): The Hilltop prospectus stated that Smith received a B.A. degree from Westmont College and did graduate work in business and psychology at the University of Southern California. Smith attended but received no degree from Westmont, and he did not take any graduate courses at the University of Southern California.

Count IV (grand theft): In 1977 Joseph and Bernice Frisby invested $35,000 in a limited partnership with Smith and National Pacific for acquisition of a Bakersfield vineyard. In 1979 the property was sold, and the partnership received cash and took back an all-inclusive deed of trust which required it to make annual payments on an existing first mortgage to "Prospect," a subsidiary of the Traveller's Life Insurance Co. The Frisbys were to receive $54,613.81 from the sale. They instead received back $26,469.30. Smith persuaded them to place the balance in an interest bearing account with National Pacific.

The buyers made installment payments to National Pacific in 1981 and 1982. Smith deposited the payments in National Pacific's account, but made no payments to the mortgage holder, nor did he pay the Frisbys their portion of the installments due them. Smith told Joseph Frisby that he had no money and that the buyers were not able to make their payments.

In 1983 the buyers were notified that the vineyard was in foreclosure because of Smith's failure to make mortgage payments, and they made no more payments to National Pacific.

Unknown to the Frisbys, Smith used their money in the National Pacific interest bearing account as a loan to the Jolon Ranch partnership, and he debited $49,879 of the account with the notation "To Prospect" and $14,518 with the notation "To Travellers." Smith failed to make the January 1984 payment to Prospect. He brought the account current in February

1984, but failed to make the January 1985 payment. The property eventually was foreclosed.

Smith appeals on the ground that the court erred in defining a security.*

. . . . . . . . . . . . . . . . . . . .

The People cross-appeal the dismissal of two counts alleging securities fraud.

DISCUSSION*

. . . . . . . . . . . . . . . . . . . .

■ The trial court instructed the jury that the "term 'security' includes an 'investment contract.' An investment contract is a contract or a transaction in which a person entrusts money or other capital to another, with the expectation of deriving a profit, income or some financial benefit from a business enterprise, the failure or success of which is dependent upon the managerial efforts of other persons."

Smith asserts this instruction amounts to a directed verdict in that it did not allow the jury to make its finding of fact as to whether Smith engaged in the sale of securities.

Corporations Code[1] section 25019 defines a security as, inter alia, "any note; stock . . . membership in an incorporated or unincorporated association . . . certificate of interest or participation in any profit-sharing agreement . . . investment contract . . . ." Although this list is expansive "the cases have adhered to the principle that substance governs over form. '[A] literal interpretation [of the statute] has been uniformly eschewed when to do so would appear to exceed any legitimate legislative purpose.' (*People* v. *Schock* (1984) 152 Cal.App.3d 379, 384-385 [199 Cal.Rptr. 327]; *Leyva* v. *Superior Court* (1985) 164 Cal.App.3d 462, 473 [210 Cal.Rptr. 545].)" (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 734 [224 Cal.Rptr. 719, 715 P.2d 680].)

The trial court accurately defined investment contracts and securities for the jury (see, e.g., *People* v. *Coster* (1984) 151 Cal.App.3d 1188, 1193-1194

---

* See footnote, *ante,* page 230.
[1] All statutory references are to the Corporations Code unless otherwise stated.

[199 Cal.Rptr. 253]; *People* v. *Figueroa, supra,* 41 Cal.3d at pp. 734-738) and did not usurp the jury's fact-finding role. After giving the disputed instruction, the trial court explained to the jury that in order to find that the investment contract was a security it must find: (1) that a person entrusted money or other capital to another; (2) that the person who entrusted the money or other capital to another did so with the expectation of receiving a profit, income, or some financial benefit from a business enterprise; and (3) that the failure of success of the business enterprise was dependent upon the managerial efforts of persons other than the person who entrusted his money or other capital.

" 'The definition of a security is a matter of law. It is the judge's duty to instruct the jury concerning that definition: the way in which a security is identified. Whether a particular piece of paper meets that definition, however, is for the jury to decide. . . .' " (*People* v. *Figueroa, supra,* 41 Cal.3d at p. 733-734, quoting *United States* v. *Johnson* (5th Cir. 1983) 718 F.2d 1317, 1321, fn. 13.)

 Smith further argues that the court erred in rejecting his proffered instruction which would have required the jury to find that he made an "indiscriminate offering to members of the general public" as an element of the definition of a security. Smith points to evidence that all the investors he solicited for the Hilltop partnership were known to him and held other investments with National Pacific.

Smith has confused the definition of a security with the requirement that certain securities be qualified or registered with the state. In California, any security offered or sold in the state must be qualified pursuant to the Corporate Securities Act, unless that security is statutorily exempt. (See §§ 25110-25113; 25100-25105; *People* v. *Park* (1978) 87 Cal.App.3d 550, 561-562 [151 Cal.Rptr. 146].)

One such exemption is for securities not offered or sold to the public. (§ 25102, subd. (f).) A nonpublic offering or sale of a security, for the purpose of exemption, is one where the security is not offered or sold to more than 35 persons, and these persons either have a preexisting personal or business relationship with the offeror or related persons, or by reason of their business or financial experience could be reasonably assumed to have the capacity to protect their own interests in connection with the transaction; the purchaser is purchasing for his or her own account; and the offer and sale are not accomplished by the publication of any advertisement. (§ 25102, subd. (f).)

In contrast to the qualification requirements, the prohibition against making false or misleading material statements in the offer or sale of securi-

ties does not contain exemptions (§ 25401), and so is applicable to the offer or sale of all securities, public or not.

Smith asserts that the very definition of a security includes a public offer. It is true that California courts often use the "risk capital" test for defining a security, and that one element of this test is that the transaction be " ' ". . . *an indiscriminate offering to the public at large where the persons solicited are selected at random*; . . ." ' " (*Fox* v. *Ehrmantraut* (1980) 28 Cal.3d 127, 138 [167 Cal.Rptr. 595, 615 P.2d 1383], italics added; *Silver Hills Country Club* v. *Sobieski* (1961) 55 Cal.2d 811, 814-815 [13 Cal.Rptr. 186, 361 P.2d 906, 87 A.L.R.2d 1135]). Smith correctly points out that several California cases list the "indiscriminate public offering" element in determining whether the investment is a security for the purposes of misrepresentation for fraud under section 25401. (See *People* v. *Schock* (1984) 152 Cal.App.3d 379, 382, 385 [199 Cal.Rptr. 327]; *People* v. *Miller* (1987) 192 Cal.App.3d 1505, 1507, 1510 [238 Cal.Rptr. 168].)

The "risk capital" test is, however, a general test, and is not applicable in all situations. Federal definitions of securities are also used in California when appropriate in determining whether an investment vehicle is a security (see, e.g., *Moreland* v. *Department of Corporations* (1987) 194 Cal.App.3d 506, 513 [239 Cal.Rptr. 558]; *People* v. *Graham* (1985) 163 Cal.App.3d 1159, 1166-1167 [210 Cal.Rptr. 318]) and these do not include a "public offering" requirement.

The "basic test" for distinguishing a security from other commercial dealings is " 'whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.' [*S.E.C.* v.] Howey Co. [1946] 328 U.S. [293] at [p.] 301 [] . . . . The touchstone [of a security] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." (*United Housing Foundation, Inc.* v. *Forman* (1975) 421 U.S. 837, 852 [44 L.Ed.2d 621, 632, 95 S.Ct. 2051], fn. omitted.)

In defining a security, there is no " 'all-inclusive formula by which to test facts in every case. And the courts have refrained from attempting to formulate such a test. Whether a particular instrument is to be considered a security within the meaning of the statute is a question to be determined in each case. In arriving at a determination the courts have been mindful that the general purpose of the law is to protect the public against the imposition of unsubstantial, unlawful and fraudulent stock and investment schemes and the securities based thereon. [Citations]' (*People* v. *Syde* [1951] 37

Cal.2d [765] at p. 768 [235 P.2d 601].)" (*People* v. *Figueroa, supra,* 41 Cal.3d at p. 736.)

■ If misleading statements or omissions are prohibited only where the investments are indiscriminately offered to the public, many investors would be unprotected by the securities fraud laws. Under Smith's theory, an offeror of securities would be free to make false or otherwise misleading material statements or omissions to prospective investors with whom he or she had previously done business.

For example, an investment contract offered to more than 35 people, all of whom had previous business relations with the offeror, would be a public sale subject to qualification with the state. (§ 25102, subd. (f).) Yet, according to Smith, because this is not an "indiscriminate" offer to the public, there would be no securities law penalty for material misstatements or omissions. The legislation in fact does more than impose criminal sanctions for failing to qualify these securities. It also imposes sanctions for fraudulently selling them.

. . . . . . . . . . . . . . . . . . .*

### People's Cross-appeal

■ Smith was originally charged with two additional counts of violating section 25401, for allegedly failing to inform potential investors that he had been convicted of Penal Code Section 487, subdivision 1 (grand theft) in 1973. One of the two counts described the conviction as a "felony."

Although Smith was convicted of felony grand theft, the charge was reduced to a misdemeanor pursuant to Penal Code section 17, subdivision (b), and subsequently dismissed. (Pen. Code, § 1203.4.) The trial court here dismissed the two counts alleging violation of section 25401 on the grounds that under Penal Code section 1203.4 "it is not a criminal offense not to voluntarily disclose the fact of a prior felony criminal conviction reduced to a misdemeanor." The People appeal the dismissal, arguing that Smith's prior conviction is a "material fact" for the purposes of section 25401.

The trial court did not err in dismissing the charges. Smith's prior conviction was a misdemeanor, not a felony (see *Boyll* v. *State Personnel Board* (1983) 146 Cal.App.3d 1070, 1076 [194 Cal.Rptr. 717]), and when the

---

*See footnote, *ante,* page 230.

charge was dismissed Smith was "released from all penalties and disabilities resulting from the offense . . . ." (Pen. Code, § 1203.4.)

The purpose of Penal Code section 1203.4 "is to relieve from further punishment, and to restore rights to, one whose probation has resulted in his reformation." (*People* v. *Majado* (1937) 22 Cal.App.2d 323, 325 [70 P.2d 1015].) Smith's record of conviction has been "wiped clean, subject only to reinstatement when, and only when, [he] commits another and subsequent crime" or other exceptional circumstances. (*People* v. *Taylor* (1960) 178 Cal.App.2d 472, 479 [3 Cal.Rptr. 186].) Smith cannot be prosecuted for failing to voluntarily disclose this misdemeanor conviction.

The convictions are affirmed, and the order dismissing the two counts is affirmed.

Stone (S. J.), P. J., and Abbe, J., concurred.

A petition for a rehearing was denied December 1, 1989, and the opinion was modified to read as printed above. The petition of appellant Smith for review by the Supreme Court was denied February 15, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.