[No. C009144. Third Dist. June 9, 1992.]

RICHARD M. MALLETT et al., Petitioners, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
BENVENUTO CROCI, Real Party in Interest.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Littler, Mendelson, Fastiff & Tichy, Paula Champagne, Steven B. Berlin and Thomas Gennaro for Petitioners.

Terry Dermody and Carol D. Stiles for Respondent.

Gibson & Gibson and Richard J. Gibson for Real Party in Interest.

**OPINION**

**DAVIS, J.—**

## I. INTRODUCTION

Pursuant to Government Code section 68073, county boards of supervisors are to provide "suitable" rooms for holding superior, municipal and justice courts and "sufficient" attendants, equipment, furniture and supplies necessary for the transaction of the business of the court.[1] Petitioners, the

---

[1]Government Code section 68073 (all further undesignated section references are to the Government Code) provides in full as follows: "In each county the board of supervisors shall provide suitable rooms for holding the superior, municipal, and justice courts, for the chambers of the judges of these courts and for court attendants, together with sufficient attendants, heat, light, furniture, furnishings, equipment, stationery, supplies, and other personal property, for the rooms and chambers and for the transaction of the business of the courts. Prior to the construction of new court facilities, the board of supervisors shall submit proposed plans to the judge or judges of the affected court for review and recommendation as to the adequacy and standard of design and such review and recommendation shall not be disregarded without reasonable grounds. [¶] If the board of supervisors of any county does not provide suitable rooms for holding the superior, municipal, or justice courts, for the chambers of the judges of those courts and for the court attendants, together with sufficient attendants, furniture, furnishings, heat, light, equipment, stationery, supplies and other personal property, . . . for transaction of business, the court shall give notice to the board of its particular needs. If the board then fails to provide anything necessary to the conduct of the court's functions, the court may direct the appropriate officers of the county to provide the same. The expenses incurred certified by the judge or judges to be correct, are a charge against the county treasury, and shall be paid out of the General Fund. [¶] This section shall not be construed as authorizing the county to supply to the official reporters of the courts Stenograph, Stenotype, or other shorthand machines; nor as authorizing the county to supply to the official reporters of the courts, for use in the preparation of transcripts, typewriters, transcribing equipment, supplies, or other personal property."

municipal court judges of the Stockton Municipal Court,[2] concluded that the services of its then elected marshal, real party in interest Benvenuto "Nick" Croci, were inadequate and that he was not supplying the court with sufficient attendants for its needs. After notifying and making an unsuccessful request of the San Joaquin County Board of Supervisors (the Board), petitioners issued an order which relieved Croci of his responsibilities for court security. The order directed the sheriff to assume the duties of court security officer which included responsibility for filling vacant deputy marshal positions and assigning deputies to courtrooms. Croci filed an action for declaratory relief, contending that petitioners exceeded the scope of their authority under section 68073. Petitioners requested summary judgment, which the trial court denied.

Petitioners now seek a writ of mandate, ordering the trial court to vacate its order and to enter a new order granting them summary judgment. The central issue we are asked to decide is whether the judges' determination under section 68073 that the services of its marshal are inadequate compels the granting of summary judgment in their favor as a matter of law, or whether the marshal's declaration disputing this conclusion raises a triable issue of material fact as to the adequacy of those services. To decide this issue we must resolve whether a determination by municipal court judges to exercise their authority under section 68073 is reviewable and, if so, what is the appropriate standard of review.[3]

In the unpublished portion of the opinion we reject petitioner's suggestion that the case is moot. In the published portion of the opinion we conclude that petitioners' determination under section 68073 that the services of its marshal are inadequate is subject to review for abuse of discretion. Because a material factual basis for its order is disputed, petitioners were not entitled to summary judgment as a matter of law and their petition is denied.

---

[2]Seven of the eight petitioners are judges of the San Joaquin County Municipal Court, Stockton Judicial District. They are Richard Mallett, Anthony Lucaccini, Rolleen McIlwrath, Sandra Butler Smith, Bernard Garber, Thomas Teaford, Jr., and James Hammerstone. Connie Callahan, the eighth petitioner who also signed the order which precipitated this action, is a county municipal court commissioner. For convenience, petitioners will sometimes be referred to as "the judges."

[3]Contrary to the assertion by the dissent, we do not assume that section 68073 grants the court authority to dismiss an elected marshal. There is no evidence in the record to support the notion that Croci was dismissed, rather than relieved of certain duties. In fact, as discussed below, Croci remained in office until his successor was sworn into office in early January 1991, approximately three years after the challenged order. In this regard, it bears emphasis that "where local conditions dictate otherwise," the court is authorized to designate another peace officer to perform the duties of court security officer. (See fn. 5, *post*.)

## II. FACTUAL AND PROCEDURAL BACKGROUND

Nick Croci was elected marshal of the Stockton Judicial District in San Joaquin County in 1972. He served in that capacity throughout the events described below.

From 1986 though 1987, petitioners became increasingly concerned about the adequacy of the security and order in their courtrooms which Croci as marshal was to provide.[4] The complaints about the marshal's performance, as summarized in their declarations, included the following: that the marshal (1) refused to hire enough permanent bailiffs; (2) failed to properly train the bailiffs who were hired; (3) failed to respond to security problems, and generated security problems when he changed courtroom procedures without prior consultation with the judges; (4) rarely came to the courthouse and seldom could be located; and (5) embarrassed the judges professionally with conduct such as hugging and kissing a female judge in the courthouse in public view.

On January 12, 1988, petitioners appeared before the Board. The record is not explicit regarding what request was made of the supervisors. Implicit in the record, however, is that the judges asked the supervisors for a court security officer who would fill already allocated deputy marshal positions and assign properly trained deputy marshals to courtrooms. That officer was the sheriff. The Board declined to do so due to what they termed "constraints of law." Following this response, the petitioners issued an order entitled "Order of Court Directing Sheriff to Supply Sufficient Law Enforcement Attendants and Designating Sheriff As Court Security Officer," which became the basis for both Croci's lawsuit against the judges and this petition.[5]

---

[4] Within the counties in which they are appointed or elected to act, marshals and constables "shall execute, serve, and return all writs, processes, and notices directed or delivered to them by municipal and justice courts or by other competent authority. . . . With respect to proceedings in the municipal or justice court, the marshal or constable of the court has all the powers and duties imposed by law upon the sheriff with respect to proceedings in the superior court. . . ." (§ 71264; see also § 71265.)

[5] Section 7(a), California Standards of Judicial Administration provides: "Each trial court should designate a specified peace officer as Court Security Officer to be responsible to the court for all matters relating to its security, including security of courtrooms, buildings and grounds. The peace officer designated as Court Security Officer should be the sheriff, marshal or constable (as appropriate) or his designee, except that where local conditions dictate otherwise another peace officer may be so designated. The Court Security Officer should be in operational command of all peace officers and others charged with a court security function while acting in that capacity and should be responsible for the adequacy of security equipment, for the competence training and assignment of security forces, and for the effective execution of the Court Security Plan."

In its recitals, the order stated that the municipal court "has been adversely impacted by the inadequate provision of sufficient attendants by the Marshal's Office . . . . The inadequate management, scheduling, supervision, and training by the Marshal's Office of its law enforcement attendants has created hindrances which endanger the safety of the public and adversely affect the proper functioning of the Municipal Court . . . ." As a result, the "Court . . . designates the Sheriff of San Joaquin County to serve as Court Security Officer and to supply sufficient law enforcement attendants for the Court." Pursuant to the order, the sheriff was given the following responsibilities: (1) to control, supervise, schedule and exercise all managerial authority including the authority to hire, fire, and discipline all attendants involved in any manner with law enforcement services for the court;[6] (2) to make probationary appointments to vacant law enforcement positions within the Marshal's Office to assure adequate provision of attendants for the Court; and (3) to ensure the adequacy of all court security equipment, court security planning and to prepare a court security plan for the court's review. The marshal was expressly relieved "of his responsibilities of serving as Court Security Officer and of providing law enforcement attendants for the Municipal Court . . . ." As authority for its order, petitioners relied on section 68073 (see fn. 1, *ante*), section 7 of the Standards of Judicial Administration[7] and/or its inherent powers to do things necessary to provide for its own governance.

After being relieved of his responsibilities for court security, Croci filed a complaint against the county counsel, the county administrator and the judges for (1) intentional infliction of emotional distress and (2) a declaration of his rights and duties in his elected office.[8] Croci alleged that the order conferring the duties of an elected officer upon another before the expiration of the incumbent's lawful term was illegal.

Petitioners moved for summary judgment, asserting that they were entitled to judgment because the order was a lawful exercise of their common law and statutory authority under section 68073. In support of the motion, each of the judges filed a declaration describing problems which they had experienced with court security attendants under Croci's management. Their separate statement of undisputed material facts indicated that in June 1987, an independent consulting firm, Cristando House, Inc., reviewed the marshal's office and concluded that it was "significantly mismanaged"; that,

---

[6]The order clarified that the effect of this shift in management responsibilities in no way affected the civil service rights of existing employees, who would continue to be considered as employees of the marshal's office, subject to the sheriff's managerial powers.

[7]See footnote 5, *ante*.

[8]Croci's complaint originally also alleged a cause of action for interference with contractual relations, as to which a demurrer was sustained.

based on their observations that law enforcement and security problems existed at the court, they concluded that Croci was not providing sufficient attendants to the court; that they made a request for sufficient attendants to the board which was denied; and that they then issued the order to supply sufficient attendants, described above.

Croci responded with a detailed 28-page declaration in which he generally denied the various incidents described by the judges. In addition, he asserted that he was in his office on a daily basis; that the temporary marshals were all employed through the San Joaquin County Personnel Office and were presumably as thoroughly tested and qualified as the permanent marshals and that he maintained temporary as opposed to permanent marshals in order to provide the greatest number of marshals. Croci disputed that the Cristando House reported that his office was "significantly mismanaged." He alleged that he provided "reasonably adequate services to the Stockton Municipal Court" and that the attendants provided were sufficient.

In its ruling on the declaratory relief claim, respondent, Superior Court of San Joaquin County, stated that the declarations filed by the judges "show ample justification for this order, pursuant to Government Code Section 68073." It denied the judges' motion for summary judgment, however. It found that although the declarations as a whole "established that the judges were acting within their jurisdiction in issuing the order in question," they "establish a triable issue of fact on the question of whether the services of the Marshal are inadequate, so as to support the exercise of discretion." The triable issue was "whether the order in question was an abuse of discretion." The court granted the judges' motion on Croci's claim for intentional infliction of emotional distress.

This petition for a peremptory writ of mandate and a stay followed. Petitioners asserted that respondent's decision is erroneous because section 68073 grants judges authority to be the sole arbiters as to whether or not a marshal's services are adequate for the transaction of court business. We summarily denied the petition and stay.

The judges filed a petition for review in the Supreme Court. The court requested an informal response addressed to the following questions: "Are trial court orders pursuant to Government Code Section 68073 subject to review? If so, under what standard?" The Supreme Court, in bank, granted the petition and transferred the matter to this district, with directions to vacate our order denying mandate and to issue an alternative writ.

On September 24, 1990, we issued an order vacating our order of July 19, 1990, denying the petition and request for a stay and issued the alternative writ.

The position of the parties at this juncture may be summarized as follows: Croci argues that the order was not properly issued pursuant to section 68073, that it is subject to review and that the standard of review should be "according to law." He contends that the declarations of the judges did not give them ample justification for their order. Croci also filed a demurrer to the petition under California Rules of Court, rule 56(e)[9] on the ground that it does not state facts sufficient to issue a writ because a factual dispute exists between the parties that cannot be resolved by summary judgment. ▆▆ ▀ ▀ Petitioners reiterate that they acted lawfully under section 68073; that judges must have final and unreviewable discretion to control the order of their courtrooms; and that, if their order is subject to review, the standard applied under the judicial immunity doctrine—that immunity will be abrogated only when a judge acts "in clear absence of all jurisdiction over the subject matter"—should be the standard of review.[10] No return was filed by the respondent court.

### III. MOOTNESS OF DECLARATORY RELIEF ACTION*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. SUMMARY JUDGMENT

▆ The court's role on summary judgment is not to try issues, but merely to determine on the basis of the parties' affidavits whether there are factual issues to be tried. (*Exchequer Acceptance Corp.* v. *Alexander* (1969) 271 Cal.App.2d 1, 11 [76 Cal.Rptr. 328].) In determining whether summary judgment is warranted, the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed. (*Roman Catholic Archbishop* v. *Superior Court* (1971) 15 Cal.App.3d 405, 411 [93 Cal.Rptr. 338].) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that

---

[9]California Rules of Court, rule 56(e), provides that the respondent or real party in interest or both may make a return, by demurrer, verified answer or both.

[10]"Although section 68073 sets forth one remedy for the court or judges where the board fails to provide courtrooms and attendants, nothing in that statute suggests that the court has no other remedy or that section 68073 is either exclusive or mandatory." (*Municipal Court* v. *Bloodgood* (1982) 137 Cal.App.3d 29, 38 [186 Cal.Rptr. 807] [court authorized to hire private counsel under § 27648].) Where the judges act under a specific statute, however, resort to the inherent power of the judiciary is not necessary and it is not necessary for the appellate court to decide whether they also had an inherent power to so act. (137 Cal.App.3d at p. 40; *Board of Supervisors* v. *Krumm* (1976) 62 Cal.App.3d 935, 941 [133 Cal.Rptr. 475].) Here, consistent with the position taken by petitioners in this court, we limit our discussion to their claim that their exercise of their authority set forth in section 68073 was nonreviewable and defeated plaintiff's declaratory relief action as a matter of law.

*See footnote, *ante*, page 1853.

the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[14]

■ "In the case of a motion for summary judgment there is . . . no open area of discretion to be exercised by the trial court. If the proceedings reveal that there is a triable issue of fact the motion must be denied. If the trial court errs and grants the motion on an erroneous finding that there is no such issue, an appeal lies from the ensuing judgment. If there is no such triable issue and the court errs in denying the motion, the ruling is an error in law and automatically is an abuse of discretion." (*Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 266 [83 Cal.Rptr. 237].)

■ Code of Civil Procedure section 437c, subdivision (*l*), provides that: ". . . [u]pon entry of any order pursuant to this section except the entry of summary judgment, a party may . . . petition an appropriate reviewing court for a peremptory writ. . . ." Due to the discretionary nature of this type of relief, the petitioner for the issuance of a writ must meet certain threshold requirements. Seeking a writ is appropriate ". . . in all cases where there is not a plain, speedy and adequate remedy, . . ." in the ordinary course of the law. (Code Civ. Proc., § 1086.) "Because there is no appeal from a denial of summary judgment (*Bricklayers & Masons Union No. 1* v. *Superior Court* (1963) 216 Cal.App.2d 578, 582 [31 Cal.Rptr. 115]), the writ is the only speedy review available." (*Leyva* v. *Superior Court* (1985) 164 Cal.App.3d 462, 468 [210 Cal.Rptr. 545], fn. omitted.) ■ Where, as here, the Supreme Court has directed the issuance of an alternative writ, it has determined that there is no other adequate remedy. (*McClatchy Newspapers, Inc.* v. *Superior Court* (1987) 189 Cal.App.3d 961, 966 [234 Cal.Rptr. 702].) "Additionally, the petitioner seeking extraordinary relief must prove a clear, present and beneficial or substantial right [citations], and that the body invested with discretion acted arbitrarily or without due regard for petitioner's rights (*Huntington Park Redevelopment Agency* v. *Duncan* (1983) 142 Cal.App.3d 17, 25 [190 Cal.Rptr. 744])." (*Ibid.*) There is no dispute here that petitioners are beneficially interested in the issuance of the writ.

Whether petitioners are entitled to a writ for the denial of their motion for summary judgment turns upon whether there exists "no triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).) Even though Croci

---

[14]"In determining whether the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

filed a detailed declaration denying their allegations and affirmatively asserting the adequacy of his services, the question is whether these factual issues are legally "material"—i.e., whether they "relate to a claim or defense in issue which could make a difference in the outcome." (*Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 976 [243 Cal.Rptr. 277].) ▉ Where the propriety of a trial court's determination that there is a triable issue of material fact depends upon the interpretation of the scope of a statute, the reviewing court must turn to an "analysis of the substantive law; the resulting interpretation . . . will indicate whether the lower court committed a legal error and thus abused its discretion. (See 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 87, p. 727.)" (*McClatchy*, *supra*, 189 Cal.App.3d at p. 967; *Environmental Planning & Information Council* v. *Superior Court* (1984) 36 Cal.3d 188, 193 [203 Cal.Rptr. 127, 680 P.2d 1086].)

## V. Reviewability of Orders Under Section 68073

We begin with a brief review of the history and development of section 68073. (See fn. 1, *ante*.) The evolution of the statute can be traced back to former Code of Civil Procedure section 144,[15] which was enacted in 1872 and repealed and replaced by section 68073 in 1953. (See Deering's Cal. Code Civ. Proc. A., § 144 (1990 ed.).) As originally enacted, neither Code of Civil Procedure section 144 nor then section 68073 provided for any notice to or demand on the county by the court.

In 1983, a proposed amendment to the statute was introduced in the Senate. Senate Bill No. 666 (Presley) as originally introduced proposed that the courts' authority to direct county officials to provide sufficient quarters, supplies, and services be eliminated. In addition, the expenses incurred under the section would no longer be chargeable against the county treasury or paid out of the general fund. (Sen. Bill No. 666 (1983-1984 Reg. Sess.) Mar. 1, 1983, § 6.)

Opponents to the proposal included the Judicial Council, the Attorney General, and the California Judges' Association. The Attorney General questioned whether deletion of this authority would violate the constitutional

---

[15]Code of Civil Procedure section 144 provided that "[i]f suitable rooms for holding the superior courts and the chambers of the judges of said courts be not provided in any city and county, or county, by the supervisors thereof, together with the attendants, furniture, fuel, lights, and stationery sufficient for the transaction of business, the courts, or the judge or judges thereof, may direct the sheriff of the city and county, or county, to provide such rooms, attendants, furniture, fuel, lights, and stationery, and the expenses incurred, certified by the judge or judges to be correct, shall be a charge against the city and county treasury, and paid out of the general fund thereof."

provision establishing the judiciary as an independent branch of government. "Clearly the county could not limit the expenses of a court to the point where it could not perform its constitutional functions, and a court order to provide necessary support would be sustained with or without statutory authority." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 666 (1983-1984 Reg. Sess.) as amended May 5, 1983, at p. 5.) The Court Management Committee of the Judicial Council stated that "[t]his is a rarely used safeguard since counties have as a matter of course provided the judicial branch trial courts with sufficient resources." The deletion of this statutory remedy "would eliminate a safeguard whereby a court could meet unforeseen events in order to continue to exercise its constitutional function and meet its duty to litigants." (May 12, 1983, Letter of Judicial Council to Barry Keene, Chairman of Sen. Judiciary Com.) It concluded by noting that "no abuse of the existing statute is known to justify the deletion proposed by SB 666." (*Id.* at p. 2.)

This proposal was not adopted. The version of section 68073 which emerged in September 1984 and remains its current form mandates that the board of supervisors be notified by the court of any perceived unsuitability or insufficiency in services or accommodations before the court can exercise its power to order necessary services and thereby create a charge against the county's general fund.[16]

If petitioners are correct in asserting that Croci's factual disputes are immaterial as a matter of law because their conclusions are not subject to review, the trial court abused its discretion in refusing to grant them summary judgment. As a policy matter, petitioners contend that, unless judges are the sole arbiters of their needs under section 68073, they will be forced to submit to the process of discovery and trial whenever anyone wishes to dispute the factual basis for their orders. A contrary interpretation would,

---

[16]The dissent takes the narrow view that, because the judges did not "seek funds from the Board to enable Croci to supply additional attendants," they operated outside the scope of section 68073. The factual predicate for this assertion is missing. Regrettably, the record before us does not contain a transcript or minutes of the Board meeting at which the court expressed its need to the Board. According to Croci, the judges issued this order "after they requested more resources from the Board. . . ." Implicit in the declarations of the judges is that the sheriff was the additional "attendant" requested pursuant to section 68073. It was the absence of an "attendant" able and willing to train and assign personnel to cover the immediate security needs of the court that created the emergency. Without such an "attendant," additional deputy marshals would not necessarily address the emergency. The sheriff was the additional "attendant" uniquely qualified to meet the emergency by training and assigning deputy marshals to meet the court's security needs. We note also that in response to questions by this court at oral argument, Croci's counsel, who was present at the instant Board meeting, stated the Board denied the judges' request by stating they had no additional funds in the budget. Counsel stated that after the sheriff started supervising court security he went to the Board and received additional funds to do so.

they contend, also undercut the legislative intent, as demonstrated by the history underlying the 1984 amendment, to refuse to give boards of supervisors the final say in what is necessary for the courts' transaction of business.

 We conclude that orders made pursuant to section 68073, including those regarding the adequacy of the marshal's services, are reviewable. The authority granted by that statute is limited in both its scope, as circumscribed by the items enumerated in the statute, and its depth, as indicated by the requirement of a finding of unsuitability or insufficiency and of necessity prior to its exercise. To conclude otherwise would be to read these limits out of the statute and thereby render them meaningless. We decline to do so. As a practical matter, our decision will not unduly disrupt the courts' ability to carry out their business by opening the floodgates of litigation. As revealed by the comments of the Judicial Council in 1983, the primary source of control over the use of the power set forth in section 68073 has resided in the courts themselves, which have exercised it sparingly.

### 1. The Scope of the Statute

In describing the scope of Code of Civil Procedure section 144, the California Supreme Court has stated that "[t]his power vested in the judge or court is not an unlimited power, and therefore not a dangerous power. This section of the code does not open wide the doors of the city treasury, and place the keys of the treasure-vaults in the hands of the judiciary, with an invitation to enter and partake *ad libitum*, . . . but the power is measured by the section, and expenditures made in excess of the limitation of the statute would be made without authority of law." (*Ex parte Widber* (1891) 91 Cal. 367, 369 [27 P. 733].)

In *Widber*, the presiding judge of a department ordered the sheriff to provide items he deemed necessary for the transaction of court business and that were not being supplied to it. The sheriff complied, incurring expenses of $1,867.42. The presiding judge then (1) certified the expenses as correct; (2) issued an order declaring the expenses to be a charge against the treasury of the city and county; and (3) ordered that the treasurer pay the amount immediately out the general fund. When the treasurer refused, the court found him in contempt and placed him in the sheriff's custody. On the treasurer's petition for habeas corpus, the Supreme Court held that the court had neither the inherent power nor power under Code of Civil Procedure section 144 to make the order requiring the treasurer to pay the expenses and that the treasurer's refusal did not constitute contempt. Once the court performs the acts allowed by statute, its power is exhausted. Nothing in the

section gave the court the power to order the treasurer to pay the expenses from the general fund; accordingly, there could be no contempt.

Shortly thereafter, in *Los Angeles Co.* v. *Superior Court* (1892) 93 Cal. 380 [28 P. 1062], the Supreme Court again cautioned against allowing orders in excess of the scope of the statute: "The power conferred by [Code of Civil Procedure] section 144 is justified only by the necessity which may sometimes demand its exercise, and ought not be enlarged by construction." (*Id.* at p. 383.) As a result, section 144 did not authorize a superior court judge to order the sheriff to provide furniture in a courthouse still under construction due to unreasonable delay by the board because the completion and furnishing of the new courthouse was within the exclusive power of the board.

### 2. *Depth of the Statute*

Within its proper scope, a court's power under section 68073 is contingent on a finding of "unsuitability" or "insufficiency." It is also apparent that a conclusion of necessity is built into the section and is a predicate for the exercise of its power.

By its terms section 68073 contemplates that several interdependent discretionary decisions have to be made by the board of supervisors and the trial court before the court is authorized to order county officials to pay for and supply additional services, facilities, and materials. First, the board of supervisors is responsible for initially determining the suitability of services, facilities, and materials provided to the court. Second, after the board of supervisors makes this threshold determination, the court must assess whether the board is meeting its responsibility before apprising the board of any inadequacy. Third, the trial court must then determine "[i]f the board . . . fails . . . to provide anything necessary to the conduct of the court's functions . . ."[17] before the statute authorizes the court to order county officials to provide additional services, facilities, and materials.

██ The 1984 amendment to section 68073 for the first time conditioned court orders on notice to the board of its "particular needs," with authorization to order the provision of those needs "[i]f the board then fails to provide anything necessary to the conduct of the court's functions. . . ." We can only presume that this change in wording by the Legislature was deliberate. (*Estate of Simpson* (1954) 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991].) ██ In analyzing a statute, "an interpretation which would render terms surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning."

---

[17]See footnote 1, *ante.*

(*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) ▮▮▮ The statute's use of each of these value-laden terms necessarily implies that discretion is being exercised and that a judgment of what is adequate and necessary is being made. There would be no reason to include these terms if the Legislature intended that courts could order the provision of additional supplies and services based on its unreviewable discretion, regardless of adequacy or necessity.

In support of their argument that judges have exclusive authority to determine the adequacy of their marshal's services, petitioners rely on an opinion by the Attorney General in 42 Ops.Cal.Atty.Gen. 159 (1963), which in turn quotes from a decision of the Arizona Supreme Court, *Merrill* v. *Phelps* (1938) 52 Ariz. 526 [84 P.2d 74], interpreting a statute similar to 68073.[18] The Riverside County Municipal Court relieved its elected marshal of all further responsibility and made permanent arrangements for the performance of his duties by other personnel after the marshal decided to discontinue all court service in order to serve process. The question presented was whether the court was required to utilize the services of its marshal as attendant to that court, or whether it may appoint other persons to perform those services. The Attorney General concluded that the court "must utilize the services of the marshal of its judicial district in preference to other personnel so long as his services are reasonably adequate. In the event that the marshal fails to supply adequate services to the court, the court may call upon the sheriff to furnish needed attendants." (42 Ops.Cal.Atty.Gen., *supra*, at p. 160.)

The focus of the opinion of the Attorney General was on the relationship between a court's inherent and statutory powers. It recognized that section 68073 provides a statutory remedy which must be exhausted by the court before it resorts to its inherent powers. (42 Ops.Cal.Atty.Gen., *supra*, at p. 162.) *Merrill* was cited as an example of this principle. Since the marshal is the officer designated by the Legislature to perform services for the court, the court could not resort to its inherent powers to appoint attendants but must utilize the marshal "[s]o long as he provides these services in a manner reasonably adequate. . . . Once the marshal fails, whether willfully, negligently or from a misapprehension of his responsibilities, . . . to provide adequate service, the judges may . . . direct the sheriff to provide suitable attendants under section 68073."[19] (*Id.* at p. 164.)

---

[18]The Arizona statute at issue, section 3693, R.C. 1928, provided in pertinent part that "if a room for holding the court be not provided by the county, together with attendants, fuel, lights, and supplies, suitable and sufficient for the transaction of business, the court may direct the sheriff to provide the same and the expenses thereof shall be a county charge." (*Merrill, supra*, at pp. 76-77.)

[19]The opinion discussed a second remedy open to a court which receives unsatisfactory or insufficient service from its marshal. Section 72150 authorizes the marshal to appoint

The Attorney General then cited language in *Merrill* which petitioners assert is dispositive: "We think it follows impliedly from the statute that the judge, when the attendants are provided, has the sole and exclusive jurisdiction of determining how many these attendants shall be, and they must act in accordance with his direction while in attendance upon the court . . . and if they do not so act, to the satisfaction of the judge, they are not suitable and sufficient for the transaction of business of the court, and he may require that other attendants be provided satisfactory to him." (42 Ops.Cal.Atty.Gen., *supra*, at p. 163, quoting *Merrill*, *supra*, 84 P.2d at p. 78.) In dicta, the opinion stated that "[o]f course, the final determination as to the adequacy of the services provided to it must be made by the judiciary. As the Arizona Supreme Court states, [¶] '[T]he judge has the final decision as to whether the attendants chosen . . . are sufficient in number and of such a character so that the things which the court thinks are necessary for these attendants to do are done, the essential dignity of the court is protected and an orderly and proper transaction of business is assured. . . .' (*Merrill* v. *Phelps*, *supra*, 84 P.2d 78-79.)"[20] (42 Ops.Cal.Atty.Gen., *supra*, at p. 165.)

We are not bound by opinions of the Attorney General. Such opinions are advisory only and do not carry the weight of law. (*People* v. *Vallerga* (1977) 67 Cal.App.3d 847, 870 [136 Cal.Rptr. 429].) "They are, however, entitled to serious consideration where no clear case authority exists." (*In re Quinn* (1973) 35 Cal.App.3d 473, 482 [110 Cal.Rptr. 881]; disapproved on other grounds, *State of California* v. *San Luis Obispo Sportsman Assn.* (1978) 22 Cal.3d 440 [149 Cal.Rptr. 482, 584 P.2d 1088].) Unlike the present case, the situation described in the Attorney General's opinion did not require a review of the court's determination that the

additional deputies based on an increase in court business or emergency with the approval of the judge or judges. The Fourth District has affirmed a trial court's judgment declaring that an order of the presiding municipal court judge to hire two more deputies based on its finding that an emergency existed was valid and enforceable. (*Board of Supervisors* v. *Krumm*, *supra*, 62 Cal.App.3d 935.) The board had contested the court's authority to enter the order and directed the auditor not to pay the new deputies' salaries, if they were hired. It thereafter filed an action for declaratory relief and for an injunction prohibiting hiring by the marshal; the court cross-complained for a writ of mandate to compel the payment of salaries. The appellate court concluded that the court had the authority to issue the order. (*Id.* at pp. 945-947.) Significantly, the board did not dispute the factual basis for the court's finding of emergency, which was well-documented in the record. The court thus had no occasion to address the situation before us—whether the factual predicate for such an order can be challenged by a third party or is wholly within the discretion of the court.

[20]Although not quoted in the Attorney General's opinion, in discussing the statutory phrase "suitable and sufficient for the transaction of business," the court in *Merrill* also stated that "the only person who can properly determine [whether what is provided complies with this requirement] . . . is the judge who presides over the court. He and he alone, knows what is reasonably suitable and sufficient to properly carry out the work of the court. . . ." (84 P.2d at p. 78.)

marshal's services were not reasonably adequate. Because the Riverside court was faced with a refusal by its marshal to provide any court services, the qualitative issue was simply not presented. To this extent, the language relied on is dicta and it is not persuasive here.

Moreover, we do not read the Attorney General's opinion as suggesting that a court's order under section 68073 is never subject to review. To the contrary, the opinion included several caveats which suggest that such an order is subject to review.[21] While these caveats are directed primarily at the proper scope of an order under section 68073, we believe that, read in its overall context, the holding in *Merrill* on which the opinion relies recognizes that a review of a court's order based on a finding of insufficiency or unsuitability is also appropriate. *Merrill* held that a sheriff had the primary power for providing suitable attendants under the Arizona statute, but that "if a court is of the reasonable opinion that the attendants so provided are not sufficient in number or suitable in character, it can demand that sufficient and suitable attendants be provided, and refuse to accept any that, in its opinion, do not satisfy these requirements." (84 P.2d at p. 79.) The Arizona court presumed that, as civil servants, the sheriff and judge would work together harmoniously and that the judge would not unreasonably reject an attendant selected by the sheriff. The inclusion of this "reasonable opinion" requirement, however, implies that the judge's opinion may be subject to review should that presumption fail. A similar caveat must be read into the Attorney General's opinion.

 Furthermore, it is manifest that discretion under section 68073 is not vested solely in the courts. To the contrary, discretion to ascertain "suitability" has been determined to properly be exercised by the board of supervisors.

"[S]tate law leaves to the boards of supervisors to determine, in each case, what is required to constitute 'suitable quarters.' " (*Simpson* v. *Hite* (1950) 36 Cal.2d 125, 127-128 [222 P.2d 225] [under former Code Civ. Proc., § 144, initiative ordinance to repeal resolutions designating a particular site ordered off the ballot].) This is not a legislative but an administrative

---

[21]The opinion points out that "[n]o question arises here as to the removal of a marshal, the abolishment of his office, or its consolidation with another office such as the sheriff's." (42 Ops.Cal.Atty.Gen., *supra*, at p. 161, fn. 1.) In concluding that, "under the circumstances, the judges were clearly authorized by section 68073 to seek performance of these services from the sheriff," it cautioned that it did "not believe, however, that these provisions authorize the court to relieve the marshal of his duties with respect to the court permanently. It appears that the authority of the court to appoint its own attendants, whether by statute or by its 'inherent power,' is dependent upon a breakdown in the machinery provided by the Legislature." (*Id.* at pp. 164-165.)

function pursuant to which the board may make "the determination that for 'suitable quarters' it was necessary or expedient to erect new buildings rather than to continue to use existing buildings, the fixing of sites for the buildings to make them convenient for the purpose to be served, the determination of the size of the buildings, the arrangement of space therein to provide courtrooms, jury rooms, judges' chambers and all the other details which enter into implementing the legislative act of the state . . . ." (36 Cal.2d at pp. 130-131.) Although the duty of the board of supervisors to provide adequate quarters for courts is mandatory, what is required to constitute "suitable quarters" is left to the discretion of the board. (*Lavine* v. *Jessup* (1958) 161 Cal.App.2d 59, 65 [326 P.2d 238] [rejecting taxpayer action against the board for waste of funds for relocating the site of a courthouse].) What supplies or other personal property are necessary for court reporters for the transaction of the business of the court has been determined to be properly within the discretion of the county. (32 Ops.Cal.Atty.Gen. 103 (1958).)[22]

Although the determination of site is discretionary with the board, the tension between the board and the court is tempered by the statutory requirement set forth in section 68073 that the board submit proposed plans for new court facilities to the affected court for review and recommendation as to the adequacy and standard of design prior to the construction of new court facilities and not to disregard such recommendation without "reasonable grounds." Presumably, if its recommendations were unreasonably rejected, the court could seek a writ of mandate to challenge the board's action. So too, we hold that an elected marshal such as Croci can challenge as unreasonable a court's determination of inadequacy or necessity.

Finally, we note that there is nothing so unique about orders issued pursuant to a court's authority under section 68073 that would justify eliminating them from review. A variety of orders arguably of equal importance to the judiciary issued pursuant to the court's asserted inherent powers are subject to review. (See 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, §§ 139-140, pp. 162-164.) Illustrations include: 1. The power over admission and discipline of attorneys; 2. The power of contempt, to protect the dignity and to prevent interference with the proper functioning of the court; 3. The rulemaking power; 4. The power to control ministerial officers (court reporter), and to appoint employees and fix their compensation. (*Ibid.*) Petitioners have failed to persuade us, either by reference to the language of section 68073 or to its underlying purpose and nature, that similar orders under

---

[22]Although the question was not directly presented, the opinion assumed that the discretion as to what constitutes "supplies or other personal property *necessary for the transaction of the business of the court*," vis-à-vis court reporters, under section 68073, resided in the county not the court. (32 Ops.Cal.Atty.Gen., *supra*, at p. 107, italics original.)

section 68073 should be left wholly to the unreviewable discretion of the issuing court.

Our research has disclosed only one case in which the factual averments of a judge to secure an attendant for his court were reviewed and determined to be insufficient to justify the exercise of his inherent power. In *Board of County Commissioners* v. *Devine* (1956) 72 Nev. 57 [294 P.2d 366], state statutes provided for the appointment of only one bailiff for each judicial district but clarified that sheriffs were not relieved of their duties to maintain order in the courts. As a result, in judicial districts with more than one judge the practice was for the sheriff to furnish deputies to serve as bailiffs as needed, in addition to the one provided by statute. A judge of the third department of the court appointed a permanent bailiff for his department. The judge submitted an affidavit in support of a petition for writ of mandate to compel the board to recognize the validity of this appointment. In it, he declared that on one occasion during the time he had presided there had been three jury trials with only one official bailiff and that, during that time, he had three different deputy sheriffs acting as bailiffs who had no experience as bailiffs. In addition, on other occasions, the judge declared that he had presided without a bailiff.

The Nevada Supreme Court noted the general rule that resort to its inherent power is appropriate if the regular, statutory methods fail or if the officials charged by statute with providing the necessary attendant arbitrarily or capriciously fail or neglect to provide the same or in the case of an emergency. Because these factual allegations did not "even remotely indicate the destruction or serious impairment of the administration of justice in department 3," the court held that the judge did not have authority to make the appointment of the bailiff. (294 P.2d at pp. 367, 368.)

## VI. Standard of Review for Orders Under Section 68073

■■■ The trial court properly determined that there is a triable issue of material fact regarding the adequacy of Croci's services as marshal which is subject to review for abuse of discretion.

Although petitioners urge otherwise, we conclude that there is simply no basis for transmuting judicial immunity principles into a standard of review for the exercise of authority under section 68073. ■■■ Under the doctrine of judicial immunity, " '[j]udges of courts of record of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously and corruptly. . . .' " (*Turpen* v. *Booth* (1880) 56 Cal. 65,

69, italics omitted, quoting *Bradley* v. *Fisher* (1871) 80 U.S. (13 Wall.) 335, 351 [20 L.Ed 646]; see also, *Taliaferro* v. *County of Contra Costa* (1960) 182 Cal.App.2d 587, 592 [6 Cal.Rptr. 231].) The basis for this immunity is the public policy concern "[t]hat to hold judicial officers personally liable for errors of judgment concerning either questions of law or fact would be subversive of both independence and efficiency in the administration of justice." (*Frazier* v. *Moffatt* (1951) 108 Cal.App.2d 379, 384 [239 P.2d 123].) As noted in *Oppenheimer* v. *Ashburn* (1959) 173 Cal.App.2d 624, 633 [343 P.2d 931], "[t]he subservient judge is the sad servant of totalitarianism. Correlatively, democracy demands and ultimately survives by the judge who cannot be controlled."

█ The concern in this case is not with petitioners' potential personal liability for the performance of judicial acts, but with the legal validity of their acts. The specter of reversal on appeal will hardly subvert either the efficiency or the independence of the judiciary, except perhaps for that unwanted "independence" which would rule without regard to the law. Courts must exercise their discretion in innumerable matters on a daily basis. To apply the concept of judicial immunity as a standard of review to these matters would effectively insulate a wide range of decisions from judicial review. We decline to adopt this dangerous stance. The better position, as recognized by the trial court, is to defer to the courts' discretion except on a showing of abuse.

Matters considered discretionary with the trial court which will not be disturbed on appeal absent a showing of abuse are legion. (See 5 Cal.Jur.3d, Appellate Review, §§ 523-528, pp. 202-219.) As indicated above, orders under section 68073 are within the court's discretion based on its determination of unsuitability, insufficiency and necessity. There is no reason why they should not be subject to the same standard of review.[23]

"Courts have never ascribed to judicial discretion a potential without restraint." (*People* v. *Russel* (1968) 69 Cal.2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794].) As noted in *Bailey* v. *Taafe* (1866) 29 Cal.422, 424, "[t]he discretion intended . . . is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal

---

[23]In a related context, some jurisdictions have indicated that a court's exercise of its inherent powers to provide for the payment of expenses necessary for its proper functioning is limited to those things reasonably necessary for its operation and is subject to review for abuse of discretion. (*McAfee* v. *State* (1972) 258 Ind. 677 [284 N.E.2d 778]; *O'Coin's, Inc.* v. *Treasurer of County of Worcester* (1972) 362 Mass. 507 [287 N.E.2d 608]; *Edwards* v. *Prutzman* (1933) 108 Pa. Super. 184 [165 A. 255]; See generally, Annot., Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes (1974) 59 A.L.R.3d 569.)

principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice."

The term "judicial discretion" is "a broad and elastic one (see 27 C.J.S. p. 292) which we have equated with the sound judgment of the court, to be exercised according to the rules of law. (*Lent* v. *Tillson* (1887) 72 Cal. 404, 422 [14 P.71].] . . . [T]he only limitation that the law has placed upon the exercise of discretionary judicial power is, that it must not be abused (*Clavey* v. *Lord* (1891) 87 Cal. 413, 419 [25 P. 493]) observing at the same time that it may be difficult to define exactly what is meant by abuse of judicial discretion. . . . (*Idem.*) . . . In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered. (*State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 432 . . . , quoting *Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669, 672 . . . ; see also, *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 349 P.2d 889] and cases therein cited.)" (*People* v. *Russel, supra,* 69 Cal.2d at p. 194, internal quotation marks omitted.) Abuse of discretion has also been defined as "arbitrary determination, capriciousness or 'whimsical thinking.' " (*City of Fresno* v. *California Highway Com.* (1981) 118 Cal.App.3d 687, 700 [173 Cal.Rptr. 671].) "This pejorative boilerplate is misleading since it implies that in every case in which a trial court is reversed for an abuse of discretion its action was utterly irrational. Although irrationality is beyond the legal pale it does not mark the legal boundaries which fence in discretion." (*City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) "[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." (*People* v. *Russel, supra,* 69 Cal.2d at p. 195.)

The exercise of discretion under section 68073 must be based on a finding of unsuitability or insufficiency and necessity which is supported by a reasonable factual foundation. By and large, courts should be the best judges of the adequacy of services provided for the transaction of their business. If, however, the facts underlying the court's determination are inaccurate, that conclusion is without substance and goes beyond the bounds of reason. A challenge to the accuracy of this conclusion thus raises a material issue of fact. In view of the conflicting affidavits on the specific facts underlying petitioners' conclusion of inadequacy here, the trier of fact must determine whether petitioners had a reasonable factual basis for concluding that Croci's services during his tenure as marshal were inadequate to support the exercise of their discretion under section 68073 or whether that discretion was abused.

## VII. DISPOSITION

The petition is denied. The order of September 25, 1990, staying all further proceedings in San Joaquin Superior Court No. 212503 is hereby vacated.

Nicholson, J., concurred.

**BLEASE, Acting P. J.**—I dissent.

This case does not arise under Government Code section 68073[1] and is, in any event, moot. The majority opinion avoids these difficulties by assuming them away.

First, on the substantive question, the opinion assumes the answer to the predicate question, whether petitioners, judges of the Stockton Municipal Court District (the Judges), were authorized by section 68073 to dismiss the district's elected marshal (Croci) as court security officer. Section 68073 empowers a court to remedy the failure of a board of supervisors to provide it with supplies, facilities or attendants necessary for the conduct of its business, essentially matters of money within the board's power to provide. (See *Ex parte Widber* (1891) 91 Cal. 367 [27 P. 733]; *Los Angeles Co.* v. *Superior Court* (1892) 93 Cal. 380 [28 P. 1062].) That is not what is at stake here.

The majority opinion asserts that section 68073 is applicable because the Board of Supervisors of San Joaquin County's (Board) failure to remedy Croci's refusal to provide the Judges with sufficient attendants for court security. However, the Judges did not seek funds from the Board to enable Croci to supply additional attendants for court security. That would have left Croci in office. They wanted to dismiss him as court security officer for mismanagement, a matter over which the Board has no authority. For this reason section 68073 cannot justify the Judges' action.

Second, on the question of mootness, the opinion assumes that something remains subject to declaratory relief after Croci's replacement as marshal by election. The relief he sought—a declaration of right to reinstatement as court security officer—has been mooted by that election. The majority opinion concedes that declaratory relief cannot remedy a past wrong. It assumes, however, that the incorporation of a damages claim for lost pension benefits from a dismissed cause of action constitutes a wrong which may be

---

[1]All further references to section numbers are to the Government Code unless otherwise specified.

remedied by declaratory relief. Neither is correct. The deprivation of pension benefits is not pleaded as a wrong to be declared and no declaration running against the Judges could affect them.

I treat these issues seriatim.

I

*Section 68073*

The underlying action was brought by Croci against the Judges seeking to invalidate their order relieving him of his duties as court security officer. The order directed the Sheriff of San Joaquin County to assume the marshal's duties and assigned the deputy marshals to that office.

The order recites as reasons "inadequate management, scheduling, supervision and training by the Marshal's Office of its law enforcement attendants [that] created hindrances which endanger the safety of the public and adversely affect the proper functioning of the Municipal Court of the Stockton Judicial District." It further recites that the Judges appeared before the Board on January 12, 1988, "notifying them of the need of the Municipal Court for sufficient attendants."

The majority opinion assumes that the Judges' authority to dismiss Croci derives from section 68073. It asks "whether the [J]udges' determination under section 68073 that the services of its marshal are inadequate compels the granting of summary judgment in their favor as a matter of law, or whether the marshal's declaration disputing this conclusion raises a triable issue of material fact as to the adequacy of those services." Since the assumption is incorrect it would be a complete waste of limited judicial resources to send this case to trial on an invalid premise.

Section 68073 obligates a board of supervisors to provide suitable rooms, sufficient attendants and supplies for the conduct of a court's business. It authorizes a court to remedy a deficiency only when the board "fails to provide anything necessary" after notice from the court. As noted, this concerns the provision of resources for the functioning of the courts. (See *Ex parte Widber, supra*, 91 Cal. 367 [failure to provide suitable rooms]; *Los Angeles Co. v. Superior Court, supra*, 93 Cal. 380.) "[T]he responsibility for carrying out that policy [is vested] in a board of supervisors." (*Simpson v.*

*Hite* (1950) 36 Cal.2d 125, 130 [222 P.2d 225].)[2] For this reason section 68073 is pertinent only if Croci's dismissal was engendered by the failure of the Board to provide resources it was empowered to provide. There was no such failure.

Although the Judges made a perfunctory appearance before the Board to request additional attendants (deputy marshals) it is apparent that they did not request money to enable Croci to provide them. That would have left him as court security officer. They were emphatic that their problems with Croci did not involve additional attendants. "The Judges stress that the present Marshal situation is *not* one which will be solved with more time or more staff in the Marshal's Office." (Declaration of Judge Lucaccini, italics added.)[3] It could only be solved by the removal of Croci for mismanagement. The declaration asserts Croci's deficiencies as: failure to meet and confer; chronic absence; poor morale among the deputy marshals, inadequate training of the deputies; improper scheduling; inadequate provision of bailiffs, who fall asleep; provision of deputy marshals with physical disabilities; improper utilization of staff; and improper management of marshals.

These matters are not within the remedial authority of the Board, as explicitly recognized by the Judges. "We realized that the Board had very limited authority in this area and that the resolution was largely outside its immediate control. This being the case, since the Board *cannot* take action, the Judges have ordered the San Joaquin County Sheriff to immediately provide attendants to resolve the deficiencies . . . ." (Declaration, *supra*, italics added.)

The manner of selection and removal of marshals and their deputies is governed by statute. "[I]n some districts the marshal is selected by a majority vote of the judges of the municipal court [e.g., Los Angeles and Sacramento Counties]." (42 Cal.Jur.3d, Law Enforcement Officers, § 13, p. 403.) In Los Angeles "the appointment and removal . . . shall be made by a

---

[2]The majority opinion refers to 42 Ops.Cal.Atty.Gen. 159 (1963) in reply to the Judges' claim there is no judicial review of its action grounded on section 68073. The Attorney General's opinion, like the majority opinion, assumes the answer to the predicate claim. Although it does allude to section 68073 in the midst of discussing a variety of remedies for a marshal's nonfeasance in office, it simply asserts, wholly without analysis of its provisions, that it can be utilized to direct the sheriff to provide suitable attendants when a marshal fails to do so. This is not even an analytical straw to be grasped at.

[3]The declaration sets out the chronology and substance of the Judges' difficulties with Croci during which they commissioned a study of the marshal's office which showed that it could be reorganized so as to provide sufficient attendants and produce "savings total[ing] $93,290.00." It was only "[w]hen Croci still took no action" that the Judges appeared before the Board and then issued the order dismissing him as court security officer.

majority vote of the municipal court judges of [the] county, and [the] marshal shall serve during the pleasure of said judges" provided that a removal may occur only for specified reasons after notice and hearing. (§ 71260.) In other counties a marshal may "be removed only for the causes and in the manner provided for the removal of officers and attaches." (§ 71086; see also § 71085.) Marshals and their deputies appointed from the civil service lists "hold office during good behavior and may be discharged by the appointing authority only for the good of the service . . . ." (§ 71260.) The manner of removal of an elected official, presumably including an elected marshal, is governed by section 3060, which provides for a proceeding before the grand jury. (See *People* v. *Hawes* (1982) 129 Cal.App.3d 930 [181 Cal.Rptr. 456].)

For districts like the Stockton Municipal Court District, the marshal is elected because the office derives from an elected constable's office. (See Municipal and Justice Court Act of 1949, Stats. 1949, ch. 1510, § 4, p. 2682; Stats. 1951, ch. 1296, § 4, p. 3182.) Such an elected official holds office until the next succeeding election. (§ 71087.) The laws particularly governing the Stockton Municipal Court District are to be found at sections 74800 to 74809.5.

These statutes restrict the disciplinary authority of judges over a marshal. Because the case is moot, a matter I next examine, it is not necessary to inquire whether the Judges' order could be justified as an exercise of their inherent powers.[4]

## II

### *Mootness*

Declaratory relief is available "in cases of actual controversy relating to the legal rights and duties of the respective parties . . . ." (Code Civ. Proc., § 1060.) This simple prescription conceals a world of justiciability. It requires that " 'the controversy must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination,

---

[4]There are additional grounds by which a court might exercise authority over the office of marshal. Marshals must "Whenever required, . . . attend the municipal . . . court[] of the district in which they are appointed or elected to act . . . ." (§ 71264.) "It shall be competent for . . . a majority of the judges of any municipal court to adopt rules for the conduct of . . . the personnel of their court . . . except where the same may be in conflict with any provisions of the State Constitution or laws relating to municipal courts and their attaches." (§ 72002.1; see *Rivas* v. *County of Los Angeles* (1961) 195 Cal.App.2d 406 [15 Cal.Rptr. 829]; *Villanazul* v. *City of Los Angeles* (1951) 37 Cal.2d 718, 723 [235 P.2d 16].) The Judges did not purport to act under these provisions.

as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, and not suggest, what the parties may or may not do.' " (*Fairchild* v. *Bank of America* (1961) 192 Cal.App.2d 252, 260 [13 Cal.Rptr. 491].) So measured, Croci's claim is not justiciable.

The only relief which Croci sought below was "a declaration that [he] be permitted to perform his elected duties as Marshal of the Stockton Judicial District . . . ." That relief was rendered moot by an election occurring after the Supreme Court returned the case to us. Croci does not tell us what relief he would be provided by a declaration that he was wrongfully relieved of his duties.

Croci argues that such a declaration would affect his pension rights. This is predicated upon allegations incorporated from the first count of Croci's complaint which sought damages for breach of contract, that, "[a]s a result of the [Judges'] order . . . he was deprived of future retirement benefits because [a] lost car allowance and cost of living increase will not be included in his highest annual rate of pay which forms the basis for his retirement benefit calculation." In the third count for declaratory relief they are pleaded as damages arising from his dismissal. The first count was dismissed following the grant of a demurrer and is not before us.

As noted, a declaratory judgment is available only if it can declare the rights and duties of the parties to the action in a way that provides specific and conclusive relief. It is not available "where *only* past wrongs are involved." (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 817, p. 259, italics added, citations omitted.) That is so for the obvious reason that a past wrong could not be averted or undone by such a judgment. Here, of course, a judgment could not declare that the Judges had a duty to restore Croci to a position to which another had been elected. That is why the focus of Croci's argument has shifted to the claimed loss of his pension rights. However, he does not assert that the denial of the pension rights he forsees is a wrong (it is asserted only as a damage occasioned by the loss of his position) nor does he tell us what way a declaratory judgment running against the *Judges* could affect his pension rights. The pension authorities are not parties to the action and there is no showing that they would be bound by a judgment running against the Judges.

Croci appears to believe that the denial of pension rights is a wrong that could be remedied by a declaratory judgment. This fails to distinguish between a wrong and the harm occasioned by the wrong. But he has not put in issue a disputed entitlement to pension benefits nor does he seek a declaration in that regard. And, as noted, a judgment running against the Judges could not in any event affect them.

Croci's claim cannot be supported by *Southern Counties Gas Co.* v. *Ventura Pipeline Constr. Co.* (1971) 19 Cal.App.3d 372 [96 Cal.Rptr. 825]. It concerned the construction of an indemnity clause in a contract for the construction of underground natural gas pipelines which the plaintiff sought to apply beyond the contract's one year guaranty clause for faulty work. The trial court entered a declaratory judgment construing "the applicable portions of the contract to permit future claims based on leaks thereafter discovered . . . ." (*Id.* at p. 380.) The appellate court said that "where 'there is a reasonable expectation that the *wrong* [*if any*] *will be repeated*,' the controversy does not present mere academic questions resulting from mootness or other considerations and declaratory relief should not be denied." (*Id.* at p. 381, italics added.)

Here, there is no expectation that the wrong—the deprivation of Croci's security functions—will be repeated. He is out of office. And there is no showing that the consequences of that wrong—the speculative deprivation of future retirement benefits—would be affected by a declaratory judgment against the Judges.

For these reasons I would grant the petition and direct entry of a summary judgment in favor of the Judges.

A petition for a rehearing was denied July 9, 1992. Blease, J., was of the opinion that the petition should be granted. Petitioners' application for review by the Supreme Court was denied August 27, 1992. Mosk, J., and Panelli, J., were of the opinion that the application should be granted.